**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **MICHAEL BAHNMAIER, individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | **Case No.** |
| **v.** | **CLASS ACTION COMPLAINT** |
| **WICHITA STATE UNIVERSITY,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

**COMPLAINT**

Plaintiff Michael Bahnmaier ("Plaintiff"), individually and on behalf of all other similarly situated persons, by and through their undersigned attorneys, files this Class Action Complaint against Wichita State University ("WSU" or "Defendant"), and alleges the following based on personal knowledge, the investigation of counsel, and information and belief:

**NATURE OF THE ACTION**

1.      With this action, Plaintiff seeks to hold WSU responsible for the harm it caused him and the thousands of similarly situated persons in the massive (and preventable) data breach WSU announced in March 2020.

2.      WSU is one of the largest public research universities in the state of Kansas.  WSU offers more than 60 undergraduate degree programs in more than 200 areas of study in six colleges. The Graduate School offers 44 master's degrees in more than 100 areas and also offers several doctoral degrees.  WSU operates a network of campuses throughout Kansas, including a main campus in Wichita, six satellite campuses, and a multitude of online degree programs.

3.     Plaintiff and the other members of the Class (as defined below) are current and former students and employees of WSU who were required to provide Defendant with certain personal information with the understanding that WSU would keep this information confidential and secure. Plaintiff and the Class trusted WSU to protect their personal information. Yet this trust was misplaced.

4.     Defendant announced that in December 2019, it learned that "an unauthorized person gained access" to a "computer server that WSU used to operate various student and employee web portals" between December 3, 2019 and December 5, 2019 (the "Data Breach" or the "Breach"). Defendant explained that by January 13, 2020, WSU determined that in the Data Breach, the hacker gained unauthorized access to confidential personally identifiable information of Plaintiff and the Class, including their names, email addresses, dates of birth, and Social Security numbers (collectively, the "PII" or the "Personal Information"). Defendant waited until March 6, 2020 to advise Plaintiff and the Class of this Breach.

5.     This class action seeks to redress WSU's negligence that caused cyber criminals and identity thieves to access Plaintiff's and the Class's Personal Information. Because of the Breach, Plaintiff and the Class have suffered damages and are at imminent risk of serious and crippling identity theft. Plaintiff and Class members have incurred and will continue to incur damages in the form of, among other things, lost time and expenses related to mitigating the harms caused by the Data Breach, increased risk of harm, diminished value of their PII, loss of privacy, and/or additional damages as described below.

6.     Accordingly, Plaintiff brings this action individually and on behalf of the Class, seeking compensatory damages, restitution, and injunctive and declaratory relief, along with the reasonable attorney fees, costs, and expenses incurred in bringing this action.

## THE PARTIES

7.      Plaintiff Michael Bahnmaier is a citizen of Kansas and is a former student of WSU.

8.      Defendant Wichita State University is a public research university based in Wichita, Kansas.  WSU had more than 16,000 students enrolled for the fall 2019 semester.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under 28 U.S.C. §1332(d)(2), because the Class defined herein contains more than 100 persons, the aggregate amount in controversy exceeds $5,000,000, and many members of the Class are citizens of states different from Defendant.[1]

10.      This Court has personal jurisdiction over Defendant because Defendant has transacted business in this District and certain transactions and occurrences alleged occurred in this District.

## FACTUAL ALLEGATIONS

11.      Plaintiff incorporates by reference all allegations of the foregoing as though fully alleged here.

### A.  The Data Breach

12.      On March 6, 2020, WSU began mailing letters to current and former students and employees informing them that their information may have been compromised in a data breach of WSU's computer server, which the company had discovered in December 2019.

---

[1] Indeed, WSU has notified the attorney generals of several states that the PII of citizens of those states was compromised in the Data Breach.  For example, in WSU's letter to the Office of the Attorney General of Iowa, it explained that the Breach implicated the PII of 1,762 Iowans.  *See* https://www.iowaattorneygeneral.gov/media/cms/3102020_Wichita_State_University_79C1A33 9D590C.pdf.

13.     The letter that Plaintiff Bahnmaier received, attached as Exhibit A, stated the following:

> The investigation determined that an unauthorized person gained access to this computer server between December 3, 2019 and December 5, 2019.   WSU performed a comprehensive review of the server and, on January 13, 2020, determined that information stored in a historical database on the server contained your name, email address, date of birth, and Social Security number.

14.     The letter acknowledged that this would cause inconvenience to affected individuals and that financial harm would likely occur, stating:

> We encourage you to remain vigilant against incidents of identity theft and fraud, *to review your account statements, and to monitor your credit reports for suspicious activity*.

(Emphasis added).

15.     The letter further acknowledged that WSU needed to improve its security protocols, stating:

> And, to help prevent a similar incident in the future, we are taking steps to enhance our existing security protocols and re-educating our staff for awareness on these types of incidents.

16.     While the letter emphasized that WSU would be "taking steps to enhance our existing security protocols and re-educating our staff for awareness on these types of incidents," WSU's inadequate security protocols and ill-prepared staff had already caused a data breach earlier *that same year*.  Indeed, in January 2019, cybercriminals spoofed the university's payroll system by sending phishing emails to WSU employees, which allowed the scammers to access bank account numbers, student records and other personal information, according to university officials.[2]  It wasn't until a number of employees did not receive their paychecks that WSU

---

[2] *See* Suzanne Perez Thomas, *WSU Employees Fall Victim to Phishing Scam, Lose Paychecks*, THE WICHITA EAGLE (Jan. 3, 2019), https://www.kansas.com/new/local/crime/article223873805.html.

discovered the data breach.[3]  WSU was therefore put on a heightened notice that its data systems were both being targeted for attack as well as vulnerable to attack.

17.     In light of WSU's data breach just months earlier, and in light of the fact that WSU maintained unencrypted PII on its unsecured server, it is obvious that WSU negligently failed to take the necessary precautions required to safeguard and protect Plaintiff's and the other Class members' PII from unauthorized disclosure. Defendant's actions represent a flagrant disregard of its employees' and students' rights, both as to privacy and property.

18.     Had WSU taken the well-known risk of cyber intrusion seriously and adequately tested, audited, and invested in its systems and adequately trained its staff to vigilantly detect vulnerabilities and intrusions, the Data Breach would not have occurred.

19.     After all, data breaches are preventable.[4]

## B. Cyber Criminals Will Use Plaintiff's and Class Members' Personal Information to Defraud Them

20.     Personal information is of great value to hackers and cyber criminals, and the PII stolen in the Data Breach can and will be used in a variety of sordid ways for criminals to exploit Plaintiff and the Class members and to profit off their misfortune.

21.     Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[5]  For example, with the PII stolen in the Data Breach, including Social Security numbers, identity thieves can open financial accounts, apply for credit, file fraudulent tax returns,

---

[3] *See* Stu Sjouwerman, *Wichita State University Employees Get Fooled into Losing their Paychecks*, CYBERHEIST NEWS (Jan. 19, 2019), https://blog.knowbe4.com/cyberheistnews-vol-9-4-it-only-takes-1-phish-wichita-state-university-employees-get-fooled-into-losing-their-paychecks.

[4] *See* Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).

[5] "Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

commit crimes, create false identification and sell it to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and as many other harmful uses as there are identity thieves.[6]  It hardly needs to be mentioned, but these criminal activities will result in devastating financial and personal losses to Plaintiff and the Class members.

22.     This is not just speculative. As the FTC has reported, if hackers get access to PII, they will use it.[7]

23.     Hackers may not use the information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[8]

24.     PII is such a valuable commodity to identity thieves that once it has been compromised, criminals often trade the information on the cyber black-market for years.

25.     Identity theft victims like Plaintiff and other Class members must spend countless hours and large amounts of money repairing the impact to their credit.[9]

26.     Defendant's offer of one year of identity monitoring to Plaintiff and the Class, although a concession that the Data Breach placed Plaintiff and the Class at great risk of future

---

[6] *See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[7] Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

[8] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.html (emphasis added).

[9] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

harm and that Defendant's systems were inadequate and breached, is woefully inadequate. The full scope of the harm has yet to be realized. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. Indeed, the type of personal information taken in this Breach has a long timeframe for use. For instance, the person who wrongfully obtained a victim's Social Security number, full legal name, and date of birth has information that is either permanent or not easily changed.   Furthermore, identity monitoring only alerts someone to the fact that they have already been the victim of identity theft (*i.e.*, fraudulent acquisition and use of another person's PII)—it does not prevent identity theft.[10]

27.     As a direct and proximate result of the Data Breach, Plaintiff and the Class have been placed at an imminent, immediate, and continuing increased risk of harm from continued fraud and identity theft. Plaintiff and the Class must now take the time and effort to mitigate the impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, alerting tax authorities to the potential for fraud, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, and credit reports for unauthorized activity for years to come.

28.     Plaintiff and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

    a.   Trespass, damage to, and theft of their personal property including PII;

    b.   Improper disclosure of their PII;

---

[10] *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, Nov. 30, 2017,      https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the-cost.html.

c.   The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and having been already misused;

d.   Damages flowing from Defendant untimely and inadequate notification of the data breach, including lost opportunity to take steps to protect themselves;

e.   Loss of privacy suffered as a result of the Data Breach;

f.   Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach; and

g.   Ascertainable losses in the form of deprivation of the value of customers' personal information for which there is a well-established and quantifiable national and international market.

29.   Below is a chart that shows the kinds of expenses and disruptions that victims of identity theft experience[11]:

---

[11] Jason Steele, *Credit Card and ID Theft Statistics*, CREDITCARDS.COM (Oct. 24, 2017), https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php.



30.     Moreover, Plaintiff and the Class have an interest in ensuring that their information, which remains in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards.

31.     Defendant itself acknowledged the harm caused by the Data Breach because it offered Plaintiff and Class members twelve months of identity theft repair and monitoring services. Twelve months of identity theft and repair and monitoring is, however, woefully inadequate to protect Plaintiff and Class members from a lifetime of identity theft risk and does nothing to reimburse Plaintiff and Class members for the injuries they have already suffered.

**C.  Defendant was Aware of the Risk of Cyber-Attacks and Could Have Prevented the Data Breach**

32.     Data security breaches have dominated the headlines for the last two decades, and it doesn't take an IT industry expert to know that major institutions like WSU are at risk.

33.     Universities in particular, with their troves of confidential information from young people, have been targeted by hackers for years.[12]  Schools large and small have been targeted with increasing frequency. UC Berkeley,[13] Oberlin College, Grinnell College, Hamilton College, Washington State University, Oregon State University, University of Connecticut,[14] Pennsylvania State University, University of Virginia, Johns Hopkins University,[15] Georgia Institute of Technology,[16] and more have been victims of high-profile and extremely damaging data breaches in just the last four years.

34.     WSU acknowledges that it is a likely target for a data breach given the amount of personal and confidential information it collects.  WSU's Security Awareness page states, in relevant part:

> PURPOSE
> You've seen it on TV and heard it on the news. While there are many processes and applications in the background regarding security at WSU, *it is vital that you are aware of those things that can assist Wichita State University in keeping data, information, and privacy intact*.

***

---

[12]Henry Gass, *UC Berkeley Breach: Universities Increasingly Targeted in Cyberattacks*, CHRISTIAN SCI. MONITOR (Feb. 29, 2016), https://www.csmonitor.com/USA/Education/2016/0229/UC-Berkeley-breach-Universities-increasingly-targeted-in-cyberattacks.
[13]*Id.*
[14]PULSEWAY, *University Data Breaches in 2019 That Are Hard To Ignore* (June 28, 2019), https://www.pulseway.com/blog/university-data-breaches-in-2019-that-are-hard-to-ignore.
[15]Kieth Wagstaff & Chiara A. Sottile, *Cyberattack 101: Why Hackers Are Going After Universities*, NBCNEWS (Sept. 20, 2015), https://www.nbcnews.com/tech/security/universities-become-targets-hackers-n429821.
[16]Bruce Sussman, *'Tech' in the Name, But Breached Twice in a Year*, SECUREWORLDEXPO.COM (Apr. 3, 2019), https://www.secureworldexpo.com/industry-news/georgia-tech-data-breach.

INFORMATION SECURITY EXPLAINED
Information security involves the preservation of:

- *Confidentiality - Ensuring information is disclosed to, and reviewed exclusively by intended recipients and/or authorized individuals*
- Integrity - Ensuring the accuracy and completeness of information and processing methods
- Availability - Ensuring that information and associated assets are accessible, whenever necessary, by authorized individuals

LAWS AND ACTS TO FOLLOW
In many cases, the responsibility of data security is the LAW. WSU must consider many Federal and State laws which are intended to make certain that certain data does not fall into the wrong hands.

- Health Insurance Portability and Accountability Act (HIPAA)
- USA Patriot Act
- Controlling the Assault of Non-Solicited Pornography and Marketing Act (CAN-SPAM)
- Higher Education Opportunity Act of 2008
- Family Educational Rights and Privacy Act of 1974 (FERPA or the Buckley Amendment)
- Digital Millennium Copyright Act (DMCA)

CONSEQUENCES OF A BREACH OF SECURITY
*Should there be a breach of security, WSU could be subject to many costly consequences.* Because we are a state educational institution of Kansas, these consequences can be very costly. The possible consequences of insufficient security are:

- Loss of productivity
- *Identity theft*
- Equipment theft
- Service interruption (e.g., email and Enterprise Resource Planning applications)
- Embarrassing media coverage
- Compromised confidence
- *Legal penalties*

VITAL INFORMATION
Your effectiveness in securing Wichita State University's information begins with an understanding of what is vitally important. *Here are some examples of data that needs to be protected*:

- Credit Card Information
- *Social Security Numbers*

11

- *Addresses*
- Private Documents
- Payroll Information
- Intellectual Property
- Academic Transcripts

\*\*\*

UNAUTHORIZED SYSTEMS ACCESS

Unauthorized systems access occurs when individuals maliciously obtain unauthorized access to computers, applications, confidential information, and other valuable assets. Not all guilty parties are unknown…….some can be your co-workers. *Unauthorized systems access can result in theft and damage of vital information*

[Emphasis added.][17]

35.     In fact, WSU had *specific* knowledge that it was at risk of a data breach due to its inadequate security measures.  Indeed, as discussed *infra*, WSU's sub-par security protocols and ill-prepared staff had already caused a data breach just months before the Data Breach that compromised Plaintiff's PII. Specifically, in January 2019, cybercriminals spoofed the university's payroll system by sending phishing emails to WSU employees, which allowed the scammers to access bank account numbers, student records and other personal information, according to university officials.[18]

36.     Among other things, WSU failed to meet the minimum standards of any of the following frameworks:  the NIST Cybersecurity Framework, NIST Special Publications 800-53, 53A, or 800-171; the Federal Risk and Authorization Management Program (FEDRAMP); or the Center for Internet Security's Critical Security Controls (CIS CSC), which are well known standards in reasonable cybersecurity readiness.

---

[17] *See* https://www.wichita.edu/services/its/security_awareness.php (last visited May 1, 2020).
[18] *See* Suzanne Perez Thomas, *WSU Employees Fall Victim to Phishing Scam, Lose Paychecks*, THE WICHITA EAGLE (Jan. 3, 2019), https://www.kansas.com/new/local/crime/article223873805. html.

37.     In addition, WSU failed to comply with Kan. Stat. § 50-6139b(b) (the "Kansas Information Security Statute"), which requires that holders of personal information must:

> (1) Implement and maintain reasonable procedures and practices appropriate to the nature of the information, and exercise reasonable care to protect the personal information from unauthorized access, use, modification or disclosure. If federal or state law or regulation governs the procedures and practices of the holder of personal information for such protection of personal information, then compliance with such federal or state law or regulation shall be deemed compliance with this paragraph and failure to comply with such federal or state law or regulation shall be prima facie evidence of a violation of this paragraph; and

> (2) unless otherwise required by federal law or regulation, take reasonable steps to destroy or arrange for the destruction of any records within such holder's custody or control containing any person's personal information when such holder no longer intends to maintain or possess such records. Such destruction shall be by shredding, erasing or otherwise modifying the personal identifying information in the records to make it unreadable or undecipherable through any means.[19]

38.     WSU failed to implement reasonable industry standards necessary to prevent a data breach, including failing to adhere to the Kansas Information Security Statute.  Among other things, if unauthorized users were able to access people's names, email addresses, dates of birth, and Social Security numbers from WSU's servers, it is clear that WSU was not maintaining such information in an encrypted format.  Such industry standard encryption would have made Plaintiff's and Class members' personal information indecipherable.

39.     Because of its failure to create, maintain, and/or comply with an adequate cybersecurity program that incorporated physical, technical, and administrative safeguards for the protection of personal information and reasonably conformed to an industry recognized cybersecurity framework, WSU was unable to ensure the protection of information, protect against

---

[19] Kan. Stat. § 50-6139b(d) provides that: "Each violation of this section shall be an unconscionable act or practice in violation of K.S.A. 50-627, and amendments thereto. Each record that is not destroyed in compliance with subsection (b)(2) shall constitute a separate unconscionable act within the meaning of K.S.A. 50-627, and amendments thereto."

obvious and readily foreseeable threats to information security and confidentiality, or protect against unauthorized access of the PII.

40.     In requesting that Plaintiff and the Class provide WSU with their most sensitive Personal Information, WSU both explicitly and implicitly represented to Plaintiff and the Class that it understood the importance of protecting their Personal Information and that it would do so as a part of their agreement. WSU represented to Plaintiff and the Class through its stated privacy policies, records retention policies, and its security practices that it maintained robust procedures designed to carefully protect the PII with which it was entrusted.

41.     WSU's Release of Student Information Policy (Privacy Law) provides the following, in relevant part:

> The Family Educational Rights and Privacy Act of 1974 (FERPA), as amended, is a federal law that sets forth requirements pertaining to the disclosure of, and access to, education records maintained by Wichita State University.
>
> Wichita State University accords all rights under the law to students. Those rights are:
>
> 1. The right to inspect and review the student's education records;
> 2. The right to request amendment of the student's education records to ensure that they are not inaccurate, misleading or otherwise in violation of the student's privacy or other rights;
> 3. *The right to consent to disclosures of personally identifiable information* contained in the student's education records, except to the extent that FERPA authorizes disclosure without consent; and
> 4. The right to file with the U.S. Department of Education a complaint concerning alleged failures by Wichita State University to comply with the requirements of FERPA.
>
> *No one outside the institution shall have access to, nor will the institution disclose any information from, students' education records without the prior written consent of the student* with the exception of disclosure to:
>
> 1. Personnel within the institution who have a legitimate educational interest,
> 2. Persons or organizations providing students financial aid,
> 3. Accrediting agencies carrying out an accreditation function,
> 4. Persons in compliance with a judicial order,

5. Persons in an emergency in order to protect the health or safety of the student or other persons, or
6. Other persons or entities to whom disclosure is permitted under FERPA.

\*\*\*

Disclosure of "Personally Identifiable" and "Directory Information"
*The university shall obtain the written consent of the student before disclosing personally identifiable information* from education records, other than directory information, except as otherwise provided in this policy.

[Emphasis added][20]

42. WSU's Policies and Procedures and Retention of University Records provides the

following, in relevant part:

**Preamble**
It is necessary and appropriate that Wichita State University requires that different types of records be retained for specific periods of time and that it designate official repositories for maintenance and retention of records. *University records must be managed in accordance with this policy.*

**Policy**
*The University is committed to effective record retention to meet legal standards, optimize the use of space, ensure security of confidential information, minimize the cost of record retention, preserve institutional history and ensure that outdated and useless records are destroyed.*

\*\*\*

**Procedures**
Responsibilities for Managing Official University Records

Departments that maintain any University Records are the Official Repository of such records and each department head or designee must:

1. Implement the department's record management practices consistent with this policy.
2. Educate staff within the department in understanding sound record management practices, including a system for efficient retrieval of Active Records.
3. Transfer Inactive Records that may have historic value to the University Archives.

---

[20] *See* http://catalog.wichita.edu/undergraduate/university-policies-procedures/release-student-information-policy-privacy-law/ (last visited April 27, 2020).

4.   *Ensure that access to confidential files is restricted.* Long-term restrictions on access to selected Archival Records should be negotiated at the time of their transfer to the University Archives.

5.   *Destroy Inactive Records that have no historic value upon passage of the applicable retention period.* If in doubt as to the potential historic value, consult with the Curator of Special Collections and University Archivist (hereinafter University Archivist) before destroying the Inactive Records.

***

<u>Inactive Records</u>

If it has been determined that University Records are Inactive Records, and therefore, not of permanent historic value, they, consistent with K.S.A. 45-403, should be destroyed in one of the following ways:

1.   Recycle non-confidential paper records; or
2.   Shred or otherwise render unreadable confidential records; or
3.   Erase or destroy Electronic Records (periodically review records generated and maintained in University information systems or equipment to ensure that these requirements are met).

[Emphasis added.][21]

43.   WSU's Privacy of Financial Information policy further provides, in relevant part:

**Preamble**
The "Safeguards Rule" promulgated by the Federal Trade Commission (FTC) under the Gramm-Leach-Bliley Act ("GLBA") imposes specific standards and obligations regarding the privacy of certain personally identifiable financial information. Wichita State University recognizes its obligation to protect the security, confidentiality and integrity of such information and this policy is intended to implement FTC requirements in this regard.

**Policy**
1.   *Wichita State University will make all reasonable efforts to achieve and maintain compliance with FTC standards and obligations regarding the privacy of personally identifiable financial information of its customers.*
2.   *Wichita State University will develop, implement and maintain a comprehensive information security program.*
3.   Wichita State University's comprehensive information security program shall provide for the appointment of an information security plan coordinator; risk assessments; training programs for employees; oversight of service providers; and periodic adjustments of the program.

---

[21] *See* https://www.wichita.edu/about/policy/ch_20/ch20_23.php (last visited April 27, 2020).

[Emphasis added.][22]

44.     In addition, WSU's Website Privacy Policy states, in relevant part:

**Security**

*We take precautions to protect your information*. When you submit sensitive information via the website, *your information is protected both online and offline.*

Wherever we collect sensitive information (such as credit card data), that information is encrypted and transmitted to us in a secure way. You can verify this by looking for a lock icon in the address bar and looking for "https" at the beginning of the address of the Web page.

*While we use encryption to protect sensitive information transmitted online, we also protect your information offline. Only employees who need the information to perform a specific job (for example, billing or customer service) are granted access to personally identifiable information. The computers/servers in which we store personally identifiable information are kept in a secure environment.*

[Emphasis added.][23]

45.     Contrary to WSU's stated policies and procedures regarding securing the sensitive information it collects, WSU failed to protect the confidential information of Plaintiff and the Class and instead allowed unauthorized hackers to access the unencrypted and insufficiently secured PII of Plaintiff and Class members.

46.     It was possible for WSU to keep the Personal Information of Plaintiff and the Class confidential.

47.     Data breaches are preventable.[24] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate

---

[22] *See* https://www.wichita.edu/about/policy/ch_20/ch20_18.php (last visited April 23, 2020).

[23] *See* https://www.wichita.edu/about/privacy.php (last visited April 27, 2020).

[24] Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).

security solutions."[25] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[26]

48.   "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures. . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[27]

49.   In a Data Breach like this, many failures committed by WSU laid the groundwork for the success (from the cyber criminal's view) of the Breach.

50.   For example, the information on WSU's systems and servers lacked the necessary encryption to maintain the confidentiality of the sensitive Personal Information Plaintiff and the Class entrusted to WSU.

51.   WSU also failed to adequately test and audit its systems and servers, failed to adequately supervise and monitor its systems and servers, failed to adequately train WSU staff and personnel, and failed to design and enforce appropriate industry-standard security policies, rules, and procedures.

52.   WSU additionally had far too much information held in unencrypted documents and/or accounts. No sophisticated business or institution in the 21st century should permit the—unencrypted—PII of hundreds of thousands of current and former students and employees to be stored on an inadequately secured server. Had WSU exercised reasonable care, it would have (at

---

[25] *Id.* at 17.
[26] *Id.* at 28.
[27] *Id.*

minimum) disposed of all former students' and employee's information as soon as it was no longer needed, and until then it should have stored such PII in an encrypted system.

53.     To the extent the Breach was caused by phishing attacks, these are readily preventable through industry standard email filtering software and regular awareness training for staff, and the harm from phishing-related breaches can be minimized through proper network segmentation and encryption of all confidential information.

54.     Had WSU exercised reasonable care, the Data Breach would not have happened and Plaintiff and the Class would not have suffered the injuries they are continuing to face.

**D.  WSU'S Response to the Data Breach is Inadequate to Protect Plaintiff and the Class**

55.     Had WSU exercised reasonable care, the Data Breach would not have happened and Plaintiff and the Class would not have suffered the injuries they are continuing to face.

56.     WSU failed to inform Plaintiff and Class members of the Data Breach in time for them to protect themselves from identity theft.

57.     The notice letters sent to Plaintiff and Class members stated that WSU discovered the Data Breach in December 2019.  Yet, WSU did not start notifying affected former and current students and employees until March 2020—three months after learning of the Data Breach.

58.     If WSU had investigated the Data Breach more diligently and reported it sooner, the damage could have been mitigated.

59.     Further, the 12-months of identity theft monitoring is seriously inadequate for the risks to which WSU has exposed its former and current students and employees. WSU has also not offered to compensate breach victims for their lost time devoted to responding to the Breach, nor has WSU offered to provide paid time-off for its employees who are using their personal time to respond to the Data Breach.

### E. Plaintiff's Experience

60.     To participate in classes as a student at WSU, Plaintiff was required to provide his PII to Defendant.

61.     Plaintiff received a letter from WSU, dated March 6, 2020, informing him that his name, email address, date of birth, and Social Security number were compromised in the Data Breach. *See* Exhibit A.

62.     Because of the Data Breach, Plaintiff's PII is now in the hands of cyber criminals. He, and all Breach Victims like him, are now imminently at risk of crippling identity theft and fraud.

63.     Since the Breach period, Plaintiff has experienced a notable increase in spam/phishing emails that he believes are related to the Data Breach.

64.     This has been distressing to him and has caused him anxiety. He feels that any day his identity may be stolen and has spent time investigating and responding to the Data Breach.

65.     In the weeks following the March 6 letter from WSU, Plaintiff has spent considerable time monitoring his credit and reviewing his account statements.

66.     Because the Data Breach was an intentional hack by cyber criminals seeking information of value that they could exploit, Plaintiff is at imminent risk of severe identity theft and exploitation.

67.     Plaintiff has also suffered injury directly and proximately caused by the Data Breach, including: (a) theft of Plaintiff's valuable PII; (b) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate and mitigate the actual and future consequences of the Data Breach, including (without limitation) monitoring their personal accounts for unauthorized activity, dealing with increased solicitations and spam emails,

and the stress, nuisance and annoyance of dealing with all issues resulting from the Data Breach; (c) the imminent and certain impending injury flowing from fraud and identity theft posed by Plaintiff's PII being placed in the hands of cyber criminals; (d) damages to and diminution in value of Plaintiff's PII that was entrusted to Defendant for the sole purpose of obtaining educational classes with the understanding that Defendant would safeguard this information against disclosure; (e) loss of the benefit of the bargain with Defendant to provide adequate and reasonable data security—*i.e.*, the difference in value between what Plaintiff should have received from Defendant (including the understanding that Plaintiff's PII would be protected by reasonable data security and the understanding that Plaintiff would receive timely notification in the event of a data breach) and Defendant's defective and deficient performance of that obligation by failing to provide reasonable and adequate data security and failing to protect Plaintiff's PII; (f) overpayment of money for educational services at WSU in that the money paid by Plaintiff and Class members included costs of WSU providing reasonable and adequate safeguards and security measures to protect their personal data, which WSU failed to do and, as a result, Plaintiff and Class members did not receive what they paid for and were overcharged by WSU; and (g) continued risk to Plaintiff's PII, which remains in the possession of Defendant and which is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect the PII that was entrusted to Defendant.

68.     WSU should be held responsible for the damages it has caused Plaintiff and the Class through the Data Breach.

### CLASS ACTION ALLEGATIONS

69.     Plaintiff incorporates by reference the allegations from the preceding paragraphs as if fully restated here.

70.     Plaintiff brings this action against WSU individually and on behalf all others similarly situated under Kan. Stat. § 60-223. Plaintiff asserts all claims on behalf of a nationwide Class defined as follows:

> **All persons whose sensitive personal information was compromised as a result of the Data Breach at Wichita State University announced in March 2020.**

71.     Plaintiff also brings this suit as a class action on behalf of the following subclass ("Kansas Student Subclass"):

> **All residents of the State of Kansas who are former or current students of Wichita State University whose sensitive personal information was compromised as a result of the Data Breach at Wichita State University announced in March 2020.**

72.     Unless otherwise indicated, the Class and the Kansas Student Subclass are referred to herein jointly as the "Class."

73.     Excluded from the Class are Defendant and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staff.

74.     Plaintiff reserves the right to amend the above definition or to propose other or additional subclasses in subsequent pleadings and motions for class certification.

a.     **Class Certification is Appropriate**

75.     The proposed Class and any additional subclasses meet the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

76.     **Numerosity:** The proposed Class is so numerous that joinder of all members is impracticable. Defendant has not publicly disclosed the total number of individuals affected, but

based on publicly available information the Class appears to include hundreds of thousands of members.

77.     **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through WSU's uniform misconduct. The same event and conduct that gave rise to Plaintiff's claims are identical to those that give rise to the claims of every other Class member because Plaintiff and each member of the Class had their Personal Information compromised in the same way by the same conduct of WSU.

78.     **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the Class that he seeks to represent; Plaintiff has retained counsel competent and highly experienced in data breach class action litigation; and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

79.     **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for members of the Class individually to effectively redress WSU's wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

80.     **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a.  Whether Defendant engaged in the wrongful conduct alleged herein;

b.  Whether Defendant failed to adequately safeguard Plaintiff's and the Class's PII;

c.  Whether Defendant owed a duty to Plaintiff and the Class to adequately protect their PII, and whether it breached this duty;

d.  Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the Breach of its IT systems;

e.  Whether Plaintiff and the Class were injured as a proximate and foreseeable result of Defendant's breach of its duties to Plaintiff and the Class;

f.  Whether Defendant violated state and federal laws, thereby breaching its duties to Plaintiff and the Class as a result of the Data Breach;

g.  Whether WSU was negligent in permitting the unencrypted PII of vast numbers of individuals to be stored within its servers;

h.  Whether WSU was negligent in failing to adhere to reasonable retention policies, thereby greatly increasing the size of the Data Breach to include former students;

i.  Whether WSU breached contractual duties to Plaintiff and the Class to use reasonable care in protecting their PII;

j.  Whether WSU failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time

possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

k.   Whether WSU continues to breach duties to Plaintiff and the Class;

l.   Whether Plaintiff and the Class suffered injury as a proximate result of WSU's negligent actions or failures to act;

m.   Whether Defendant was unjustly enriched by its failure to adequately invest in minimum data security measures necessary to protect the PII; and

n.   Whether Plaintiff and the Class are entitled to recover damages, restitution, declaratory, injunctive and other equitable relief, and attorney fees, costs, and expenses.

<u>**CAUSES OF ACTION**</u>

**FIRST CAUSE OF ACTION**
**NEGLIGENCE**
**(On Behalf of the Class)**

81.   Plaintiff incorporates by reference all preceding factual allegations as though fully alleged here.

82.   Defendant WSU solicited, gathered, and stored the PII of Plaintiff and the Class.

83.   Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if the PII were wrongfully disclosed.

84.   Defendant had a duty to Plaintiff and each Class member to exercise reasonable care in holding, safeguarding, and protecting that information.

85.   Plaintiff and the Class members were the foreseeable victims of any inadequate safety and security practices.

86.     Plaintiff and the Class members had no ability to protect their PII that was in WSU's possession.

87.     Defendant was well aware of the fact that cyber criminals routinely target large institutions, such as universities, through software vulnerabilities and phishing attacks and other cyberattacks in an attempt to steal PII.

88.     Defendant owed Plaintiff and the Class members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard such data and providing notification to Plaintiff and the Class members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

89.     Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B.

90.     Defendant knew or should have known the risk of collecting and storing the PII and the importance of maintaining secure systems.

91.     Defendant had duties to protect and safeguard the PII from unauthorized disclosure. Defendant had a duty to use reasonable, industry standard information security measures when dealing with sensitive Personal Information. Specific duties that WSU owed Plaintiff and the Class include:

> a.  To create, maintain, and comply with a written cybersecurity program that incorporated physical, technical, and administrative safeguards for the protection

of personal information and reasonably conforms to an industry recognized cybersecurity framework;

b.   To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting the Personal Information in its possession;

c.   To protect the Personal Information in its possession using reasonable and adequate security procedures and systems, including firewalls and encryption;

d.   To adequately and properly audit, scan, monitor, and test its IT systems for vulnerabilities and intrusions;

e.   To adequately and properly audit, test, and train its employees regarding how to properly and securely transmit and store Personal Information;

f.   To implement processes to quickly detect a data breach, security incident, or intrusion; and

g.   To promptly notify Plaintiff and Class members of any data breach, security incident, or intrusion that affected or may have affected their Personal Information.

92.   Defendant owed these duties to Plaintiff and the Class because they are a well-defined, foreseeable, and probable class of persons whom Defendant was aware (or should have been) would be injured by Defendant's breach of these duties.

93.   Defendant also had a heightened duty to implement an adequate cyber security program and safeguards to protect the Plaintiff and Class members' PII due to the prior breach WSU experienced in January 2019.

94.   Plaintiff and the Class were the intended beneficiaries of Defendant's duties. Plaintiff and the Class lacked the ability to protect the information they had entrusted to Defendant and relied entirely on Defendant to keep it safe and secure. A special relationship therefore existed

between the Class and WSU. Defendant was in a position to ensure that its systems were sufficient to protect the PII that Plaintiff and the Class had entrusted to it.

95.    There is a close causal connection between WSU's failure to implement reasonable security measures to protect its current and former student and employees' PII and the harm suffered by Plaintiff and members of the Class.

96.    The public policy of preventing future harm supports finding a special relationship between WSU and its students and employees. It was foreseeable to WSU that collecting large amounts of student and employee personal information without adequate data security practices and policies would lead to improper disclosure of such information and cause injuries to students and employees.  Indeed, WSU had experienced a data breach just months before the Data Breach at issue in this Complaint.

97.    There is a very close connection between WSU's negligence and the injuries that Plaintiff and the Class suffer. If institutions are not held accountable for such negligence, they will not take needed steps to protect the PII they collect from individuals.

98.    Defendant breached its duties of care by failing to adequately protect Plaintiff's and the Class's Personal Information. Defendant breached its duties by, among other things:

      a.   Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, deleting, and protecting the Personal Information in its possession;

      b.   Failing to protect the Personal Information in its possession using reasonable and adequate security procedures and systems;

      c.   Failing to adequately and properly audit, scan, monitor, and test its IT systems to identify and correct vulnerabilities;

d.  Failing to implement and enforce adequate security policies, systems, protocols and practices sufficient to protect the Personal Information, and thereby creating a foreseeable, unreasonable risk of harm;

e.  Failing to adequately and properly audit, test, and train its employees regarding how to properly and securely protect Personal Information;

f.  Failing to comply with the minimum industry data security standards, including the guidelines issued by the FTC, to protect the Personal Information it solicited and retained;

g.  Failing to consistently enforce security policies aimed at protecting Plaintiff and the Class's Personal Information;

h.  Failing to implement processes to quickly detect data breaches, security incidents, or intrusions;

i.  Failing to abide by reasonable retention and destruction policies for the Personal Information of former students and employees; and

j.  Failing to promptly notify Plaintiff and Class members of the Data Breach that affected their Personal Information.

99.  Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

100.  As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiff and the Class have suffered actual damages, as described above, and are at imminent risk of additional harms and damages.

101.  The damages Plaintiff and the Class have suffered were and are reasonably foreseeable.

29

102.     The damages Plaintiff and the Class have and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

103.     Plaintiff and the Class have suffered injury and are entitled to actual and punitive damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE *PER SE***
**(On Behalf of the Class, or alternatively, a Kansas Student Subclass)**

104.     Plaintiff incorporates by reference all preceding factual allegations as though fully alleged here.

105.     Pursuant to the Kansas Consumer Protection Act and the Kansas Information Security Statute, Defendant has additional duties to implement safeguards to protect Plaintiff's and the Class's PII.

106.     Defendant breached its duties to Plaintiff and the Class under the Kansas Consumer Protection Act and the Kansas Information Security Statute by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the PII of Plaintiff and the Class.

107.     Defendant further breached its duties to Plaintiff and the Class under the Kansas Protection of Consumer Information Notification Statute by failing to provide prompt notice of the Breach without reasonable delay.

108.     Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

109.     Plaintiff and the Class are within the class of persons that the Kansas Consumer Protection Act the Kansas Information Security Statute, and the Kansas Protection of Consumer Information Notification Statute were intended to protect.

110.    The harm that occurred as a result of the Data Breach is the type of harm the Kansas Consumer Protection Act the Kansas Information Security Statute, and the Kansas Protection of Consumer Information Notification Statute were intended to guard against.

111.    Plaintiff and the Class have suffered damages as a result of Defendant's breaches of its duties, and the damages were foreseeable.

112.    Defendant's violations of these duties are the proximate cause of Plaintiff's and the Class members' damages.

113.    Plaintiff and the Class are entitled to actual and punitive damages for Defendant's negligence *per se* in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### BREACH OF IMPLIED CONTRACT
### (On Behalf of the Class)

114.    Plaintiff incorporates by reference all preceding factual allegations as though fully alleged here.

115.    Plaintiff and Class members who are or were students of WSU were required, as a condition of their enrollment, to provide Defendant with their PII, including their Social Security numbers.

116.    Plaintiff and Class members who are or were employees of WSU were required, as a condition of their employment, to provide Defendant with their PII, including their Social Security numbers.

117.    WSU was obligated, as outlined in WSU's privacy policies, records retention policies, and security policies, to maintain the confidentiality of Plaintiff and Class members' PII, particularly the PII of WSU's current and former students.

118.    Further, implicit in WSU's collection of Plaintiff and Class members' PII, as part of student enrollment and employee hiring, was the obligation that the information provided to WSU would be maintained confidentially and securely.

119.    WSU has an implied duty of good faith to reasonably safeguard and protect the PII of Plaintiff and Class members from unauthorized disclosure or uses.

120.    Additionally, Defendant implicitly promised to retain this PII only under conditions that kept such information secure and confidential.

121.    Based on the implicit understanding and also on Defendant's representations (as described above), Plaintiff and the Class accepted Defendant's offers and provided Defendant with their Personal Information.

122.    Plaintiff and Class members would not have provided their Personal Information to Defendant had they known that WSU would not safeguard their Personal Information as promised or provide timely notice of a data breach.

123.    Plaintiff and Class members fully performed their obligations under the implied contracts with Defendant.

124.    Defendant breached the implied contracts by failing to safeguard Plaintiff's and Class members' PII and failing to provide them with timely and accurate notice of the Data Breach.

125.    Based on Defendant's representations and acceptance of Plaintiff's and the Class members' PII, Defendant had an express and/or implied duty to safeguard their PII through the use of reasonable industry standards.

126.    Defendant's failure to protect the PII of Plaintiff and Class members who are employees constitutes a material breach of the terms of the agreement by Defendant.

127.    As a direct and proximate result of Defendant's breach of implied contract, Plaintiff and the Class members have suffered damages, including foreseeable consequential damages that Defendant knew about when it requested Plaintiff's and the Class members' PII.

128.    As a result of WSU's breach of contract or implied contract, by failing to adequately secure Plaintiff and Class members' PII, Plaintiff and Class members did not receive the full benefit of the bargain, and instead received services that were less valuable than described and bargained for.  Plaintiff and Class members, therefore, were damaged in an amount at least equal to the difference in value between what was bargained for and what WSU provided.

129.    Also as a result of WSU's breach of contract or implied contract, Plaintiff and Class members have suffered actual damages resulting from the theft of their PII, and they remain at imminent risk of suffering additional breaches in the future.

130.    Accordingly, Plaintiff and the Class are entitled to compensatory damages, including restitution and unjust enrichment, injunctive relief requiring WSU to more securely maintain the PII of Plaintiff and the Class, and attorney fees, costs, and expenses.

## FOURTH CAUSE OF ACTION
### VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT
#### KAN. STAT. §§ 50-626(A), (B)(1)(A)(D) AND (B)(3), AND KAN. STAT. §50-627, ET SEQ.
#### (ON BEHALF OF THE KANSAS STUDENT SUBCLASS)

131.    Plaintiff incorporates by reference all preceding factual allegations as though fully alleged here.

132.    Plaintiff and members of the Kansas Student Subclass constitute consumers pursuant to the Kansas Consumer Protection Act.

133.    WSU engaged in the conduct alleged in this Complaint in transactions intended to result, and which did result, in the sale of services to consumers, including Plaintiff and the Kansas Student Subclass.

134.    WSU's acts, practices and omissions were done in the course of WSU's business of marketing, offering for sale, and selling services throughout the United States, including in Kansas.

135.    WSU's conduct as alleged in this Complaint, including without limitation, WSU's failure to maintain adequate computer systems and data security practices to safeguard students' and employees' personal information, WSU's failure to disclose the material fact that its computer systems and data security practices were inadequate to safeguard the personal information it was collecting and maintaining from theft, and WSU's failure to disclose in a timely and accurate manner to Plaintiff and members of the Kansas Student Subclass the material fact of the WSU's Data Breach constitutes unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and/or unlawful acts or practices.

136.    By engaging in such conduct and omissions of material facts, WSU has violated Kansas consumer laws prohibiting representing that "property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have," representing that "property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation," and/or "willful[ly] fail[ing] to state a material fact, or the willful concealment, suppression or omission of a material fact."  Kan. Stat. §§ 50-626(b)(1)(A), (b)(1)(D) and (b)(3).  WSU has also violated Kansas consumer laws by engaging in a "deceptive act or practice in connection with a consumer transaction." Kan. Stat. § 50-626(a).

137.    In addition, WSU has violated Kan. Stat. § 50-627 by "engag[ing] in any unconscionable act or practice in connection with a consumer transaction."  A violation of the Kansas Information Security Statute "shall be an unconscionable act or practice in violation of

K.S.A. 50-627, and amendments thereto." Kan. Stat. § 50-6139b(d). The Kansas Information Security Statute requires that holders of personal information, including social security numbers, must (among others) "implement and maintain reasonable procedures and practices" and "exercise reasonable care to protect the personal information from unauthorized access, use, modification or disclosure." Kan. Stat. § 50-6139b(b)(1). The Kansas Information Security Statute further requires that holders of personal information must "take reasonable steps to destroy or arrange for the destruction of any records within such holder's custody or control containing any person's personal information." Kan. Stat. § 50-6139b(b)(2). WSU failed to comply with the Kansas Information Security Statute, by failing to reasonably protect Plaintiff and Class members' PII, including their social security numbers, and by failing to take reasonable steps to destroy such information once it was no longer needed. As a result, WSU has engaged in an unconscionable act or practice in violation of Kan. Stat. § 50-627. *See* Kan. Stat. § 50-6139b(d).

138.   Plaintiff and the Kansas Student Subclass have suffered damages as a result of Defendant's breaches of its duties and violations of the Kansas Consumer Protection Act, and such damages were foreseeable.

139.   Defendant's violations of these duties are the proximate cause of Plaintiff's and the Kansas Student Subclass members' damages.

140.   Plaintiff seeks all available relief, including (without limitation) restitution to the Class of money or property that the Defendant acquired by means of Defendant's deceptive, unlawful, unfair, and unconscionable business practices, declaratory relief, attorney fees, costs and expenses, and injunctive or other equitable relief.

FIFTH CAUSE OF ACTION
VIOLATION OF THE KANSAS PROTECTION OF
CONSUMER INFORMATION NOTIFICATION STATUTE,
KAN. STAT. §§ 50-7a02(a), ET SEQ.
(ON BEHALF OF THE KANSAS STUDENT SUBCLASS)

141.    Plaintiff incorporates by reference all preceding factual allegations as though fully alleged here.

142.    Plaintiff and members of the Kansas Student Subclass constitute consumers pursuant to the Kansas Consumer Protection Act.

143.    WSU engaged in the conduct alleged in this Complaint in transactions intended to result, and which did result, in the sale of services to consumers, including Plaintiff and the Kansas Student Subclass.

144.    The Data Breach constituted a breach of the security system of WSU within the meaning of the Kansas Protection of Consumer Information Notification Statute ("KPCI"), Kan. Stat. §§ 50-7a02(a), et seq.

145.    The KPCI requires institutions that collect and maintain computerized personal information to "give notice to the affected Kansas resident without unreasonable delay and as soon as possible."

146.    Plaintiff's and Class members' names, email addresses, dates of birth, and Social Security numbers were compromised as part of the Data Breach.  Such information, particularly the Social Security numbers combined with the individuals' names, constitute personal information under KPCI.

147.    WSU unreasonably delayed in informing the public, including Plaintiff and members of the Kansas Student Subclass about the Breach that of security that left their highly sensitive personal information exposed.

36

148.    While WSU learned of the Data Breach in December 2019, and determined that Plaintiff's and the Class members' personal information was exposed as part of the Breach by January 13, 2020, WSU inexplicably waited until March 6, 2020 before beginning to notify the affected victims of the Breach.

149.    WSU failed to disclose to Plaintiff and the Kansas Student Subclass members without unreasonable delay and in the most expedient time possible, the breach of security of their PII when WSU knew, or reasonably believed, such information had been compromised.

150.    Plaintiff and members of the Kansas Student Subclass suffered harm directly resulting from WSU's failure to provide and the delay in providing Plaintiff and the Kansas Student Subclass members with timely and accurate notice as required by the KPCI.  Plaintiff and the Kansas Student Subclass suffered damages as a direct result of WSU's delay in providing timely and accurate notice of the data breach.

151.    Had WSU provided timely and accurate notice of the Data breach, Plaintiff and Kansas Student Subclass members would have been able to avoid and/or attempt to ameliorate or mitigate the damages and harm resulting from the unreasonable delay by WSU in providing notice.

152.    As a result of Defendant's violation of the KPCI, Plaintiff and the Class were deprived of prompt notice of the Data Breach and were thus prevented from taking appropriate protective measures, such as securing identity theft protection or requesting a credit freeze. These measures could have prevented some of the damages suffered by Plaintiff and Class members because their stolen information would have had less value to identity thieves.

153.    As a result of Defendant's violation of the KPCI, Plaintiff and the Class suffered incrementally increased damages separate and distinct from those simply caused by the Data Breach itself.

154.    Plaintiff and the Class seek all available remedies, including, but not limited to the damages suffered by Plaintiff and the other Class members as alleged above and equitable relief.

**SIXTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of the Class)**

155.    Plaintiff incorporates by reference all preceding factual allegations as though fully alleged here.

156.    Plaintiff and the Class bring this claim in the alternative to all other claims and remedies at law.

157.    By way of its affirmative actions and omissions, including its knowing violations of its express or implied contracts with Plaintiff and the Class, its violation of Kansas law, and its violation of its common law duties of care, Defendant knowingly and deliberately enriched itself by saving the costs it reasonably and contractually should have expended on data security measures to secure Plaintiff's and Class members' PII.

158.    Instead of providing for a reasonable level of security that would have prevented the Data Breach, as described above and as is common industry practice among entities entrusted with similar PII (including WSU itself, which had experienced a data breach just months before the Breach at issue here), Defendant instead consciously and opportunistically calculated to increase its own profits at the expense of Plaintiff and Class members.

159.    While it cut costs on security, Defendant continued to obtain the benefits conferred on it by Plaintiff and the Class, including the benefits of tuition and other fees and the benefit of continued employment from its faculty and staff.

160.    Plaintiff and Class members, on the other hand, suffered as a direct and proximate result. As a result of Defendant's decision to profit rather than provide requisite security and the

resulting disclosure of students' and employees' PII, Plaintiff and Class members suffered and continue to suffer considerable injuries as alleged in detail above.

161.    Defendant, therefore, was unjustly enriched when it profited from Plaintiff and the Class by promising to protect their PII but failing to invest the necessary resources into doing so. As such, it would be inequitable, unconscionable, and unlawful to permit Defendant to retain the benefits it derived as a consequence of this failure.

162.    Accordingly, Plaintiff on behalf of himself and the Class members, is entitled to relief in the form of restitution and/or compensatory damages.

**SEVENTH CAUSE OF ACTION**
**INJUNCTIVE AND DECLARATORY RELIEF**
**(On Behalf of the Class)**

163.    Plaintiff incorporates by reference all preceding factual allegations as though fully alleged here.

164.    Plaintiff and the Class bring this claim in addition to all other claims and remedies.

165.    As previously alleged and pleaded, Defendant owes duties of care to Plaintiff and the Class that require it to adequately secure their Personal Information.

166.    Defendant still possesses the PII of Plaintiff and the Class.

167.    Defendant has not satisfied its contractual obligations and legal duties to Plaintiff and the Class.

168.    Defendant has claimed that it is taking some steps to increase its data security, but there is nothing to indicate that these changes will be sufficient, and there is nothing to prevent Defendant from reversing these changes once it has weathered the increased public attention resulting from this Breach.

169.    Plaintiff, therefore, seeks a declaration (1) that Defendant's existing security measures do not comply with its contractual obligations and duties of care to provide adequate

security, and (2) that to comply with its contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

a. Ordering Defendant to engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

b. Ordering Defendant to engage third-party security auditors and internal personnel to run automated security monitoring;

c. Ordering that Defendant audit, test, and train their security personnel regarding any new or modified procedures;

d. Ordering that Defendant segment student and employee data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, hackers cannot gain access to other portions of Defendant's systems;

e. Ordering that Defendant implement encryption rules on all IT systems containing Personal Information of students and employees;

f. Ordering that Defendant purge, delete, and destroy in a reasonably secure manner Personal Information not necessary for its provisions of services;

g. Ordering that Defendant conduct regular database scanning, vulnerability, and securing checks;

h.  Ordering Defendant to routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

i.  Ordering Defendant to implement and enforce adequate retention policies for Personal Information, including destroying student and employee Personal Information as soon as it is no longer necessary for the purposes it was originally acquired; and

j.  Ordering Defendant to meaningfully educate its current, former, and prospective employees about the threats they face as a result of the loss of their personal information to third parties, as well as the steps they must take to protect themselves.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment against Defendant as follows:

a.  An order certifying this action as a class action, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b.  A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual and statutory damages, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper;

c.  An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.  An order requiring Defendant to pay the costs involved in notifying the Class about the judgment and administering the claims process;

e.  A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

f.  An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all appropriate issues raised in this Complaint.

Dated: May 14, 2020

Respectfully submitted by:

BOULWARE LAW LLC

/s/ Brandon J.B. Boulware
Brandon J.B. Boulware        KS # 25840
1600 Genessee Street, Suite 416
Kansas City, MO 64102
Tel:     (816) 492-2826
Email:  Brandon@boulware-law.com

William B. Federman
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com

*Counsel for Plaintiff and the Putative Class*