**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

MICHAEL BAHNMAIER, individually and
on behalf of all others similarly situated,

          Plaintiff,

    v.

WICHITA STATE UNIVERSITY,

          Defendant.

Case No. 2:20-cv-02246-JAR-TJJ

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**UNOPPOSED MOTION FOR ATTORNEYS' FEES AND EXPENSES**
**AND FOR A SERVICE AWARD TO REPRESENTATIVE PLAINTIFF**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     NATURE OF THE LITIGATION AND PROCEDURAL HISTORY .............................. 2

III.    SUMMARY OF RESULTS ACHIEVED .................................................................. 3

IV.     LEGAL STANDARDS ........................................................................................ 6

V.      THE REQUESTED ATTORNEYS' FEE AWARD IS RESONABLE AND SHOULD
        BE AWARDED ................................................................................................. 7

        A.      Counsel's Fee Request is Appropriate Under the Lodestar Method...................... 8

                1.   The Hours Expended by Counsel Were Necessary and Reasonable ..................... 9

                2.   Counsel's Hourly Rates Are Reasonable ............................................... 10

                3.   The Modest Multiplier Supports the Requested Fee Award................................ 13

        B.      The Johnson Factors Support the Requested Award of Attorneys' Fees and
                Reimbursement of Expenses.................................................................... 14

                1.   Time and Labor Involved..................................................................... 15

                2.   The Novelty and Difficulty of the Questions....................................... 15

                3.   The Skill Requisite to Perform the Legal Service Properly.................... 16

                4.   The Preclusion of Other Employment by the Attorney Due to the Acceptance
                     of the Case............................................................................................ 16

                5.   The Customary Fee .............................................................................. 16

                6.   Whether the Fee is Fixed or Contingent ............................................... 17

                7.   Time Limitations Imposed by the Client or Other Circumstances ..................... 17

                8.   The Amount Involved and the Results Obtained.................................. 18

                9.   The Experience, Reputation, and Ability of the Attorneys.................... 18

                10.  The Undesirability of the Case ............................................................ 19

                11.  The Nature and Length of the Professional Relationship with the Client ........... 19

                12.  Awards in Similar Cases...................................................................... 19

        C.      Reaction from Class Members Supports the Requested Award of Attorneys'
                Fees and Reimbursement of Expenses.................................................... 20

VI.     PLAINTIFF'S COUNSEL'S EXPENSES SHOULD BE APPROVED......................... 20

VII.    THE REQUESTED SERVICE AWARD FOR PLAINTIFF SHOULD BE
        APPROVED ..................................................................................................... 21

VIII.   CONCLUSION.................................................................................................. 22

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Abbott v. Lockheed Martin Corp.*,

    2015 WL 4398475 (S.D. Ill. July 17, 2015) ............................................................ 11

*Anderson v. Merit Energy Co.*,

    No. 07-CV-00916, 2009 WL 3378526 (D. Colo. Oct. 20, 2009) ...................................... 15, 20

*Aragon v. Clear Water Prod. LLC*,

    No. 15-CV-02821-PAB-STV, 2018 WL 6620724 (D. Colo. Dec. 18, 2018) ......................... 21

*Behrens v. Wometco Enters., Inc.*,

    118 F.R.D. 534 (S.D. Fla. 1988) ................................................................................ 14

*Brown v. Phillips Petroleum Co.*,

    838 F.2d 451 (10th Cir. 1988) ............................................................... 7, 15, 16, 17

*Case v. Unified Sch. Dist. No. 233*,

    157 F.3d 1243 (10th Cir. 1998) .................................................................................. 6

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*,

    888 F.3d 455 (10th Cir. 2017) .................................................................................. 21

*Chieftain Royalty Co. v. XTO Energy Inc.*,

    No. CIV-11-29-KEW, 2018 WL 2296588 (E.D. Okla. Mar. 27, 2018) ...................... 7, 13, 20

*Flitton v. Primary Residential Mortgage, Inc.*,

    614 F.3d 1173 (10th Cir. 2010) .................................................................................. 6

*Friedman v. Quest Energy Partners LP*, No. CIV-0,

    8-1025-M, 2010 WL 4925133 (W.D. Okla. Nov. 29, 2010) .................................................. 11

*Garcia v. Tyson Foods, Inc.*,

    2012 WL 5985561 (D. Kan. Nov. 29, 2012) .................................................................. 6

*Hapka v. CareCentrix, Inc.*,

    No. 2:16-CV-02372-KGG, 2018 WL 1879845 (D. Kan. Feb. 15, 2018) ......................... 12, 19

*Hensley v. Eckerhart,*

    461 U.S. 424 (1983) ................................................................................................ 7, 9, 10, 17

*In re Anthem, Inc. Data Breach Litig.,*

    No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ............................... 12

*In re Davita Healthcare Partners, Inc.,*

    No. 12-CV-2074-WJM-CBS, 2015 WL 3582265 (D. Colo. June 5, 2015) ............................ 14

*In re Miniscribe Corp.,*

    309 F.3d 1234 (10th Cir. 2002) ............................................................................................ 6, 13

*In re Sony SXRD Rear Projection Television Class Action Litig.,*

    No. 06 CIV. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) .................................... 8

*In re Sprint Corp. ERISA Litig.,*

    443 F. Supp. 2d 1249 (D. Kan. 2006) ................................................................................... 6, 13

*In re Williams Sec. Litig.-WCG Subclass,*

    558 F.3d 1144 (10th Cir. 2009) ................................................................................................. 20

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*

    No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ................................. 12

*Jane L. v. Bangerter,*

    61 F.3d 1505 (10th Cir. 1995) ................................................................................................... 12

*Jeffboat LLC. v. Director, Office of Workers' Comp Programs,*

    553 F.3d 487 (7th Cir. 2009) ..................................................................................................... 12

*Johnson v. Georgia Highway Express, Inc.,*

    488 F.2d 714 (5th Cir. 1974) .................................................................................................. 7, 14

*Lane v. Page,*

    862 F. Supp. 2d 1182 (D.N.M. 2012) ......................................................................................... 8

*Lucas v. Kmart Corp.,*

    2006 WL 2729260 (D. Colo. July 27, 2006) ............................................................................ 19

*Millsap v. McDonnell Douglas Corp.*,
    No. 94-CV-633-H(M), 2003 WL 21277124 (N.D. Okla. May 28, 2003) ................................ 20

*Mirakay v. Dakota Growers Pasta Co.*,
    No. 13-CV-4429 JAP, 2014 WL 5358987 (D.N.J. Oct. 20, 2014)............................................ 8

*Mishkin v. Zynex, Inc.*,
    2012 WL 4069295 (D. Colo. Sep. 14, 2012)........................................................................... 13

*Nakkhumpun v. Taylor*,
    No. 12-CV-01038-CMA-CBS, 2016 WL 11724397 (D. Colo. June 13, 2016) ....................... 11

*Peterson v. Mortgage Sources Corp.*,
    2011 WL 3793963 (D. Kan. Aug. 25, 2011) ........................................................................... 19

*Pollard v. Remington Arms Co., LLC*,
    320 F.R.D. 198 (W.D. Mo. 2017)............................................................................................ 11

*Rosenbaum v. MacAllister*,
    64 F.3d 1439 (10th Cir. 1995) .................................................................................................. 6

*Shaw v. Interthinx, Inc.*,
    No. 13-CV-01229-REB-NYW, 2015 WL 1867861 (D. Colo. Apr. 22, 2015)........................ 13

*Stanaford v. Genovese*,
    No. 9:13-CV-80923 (KLR), 2015 WL 4930209 (S.D. Fla. Aug. 17, 2015)............................ 11

*U.S. ex rel. Silva's Excavation, Inc. v. Jim Cooley Const., Inc.*,
    572 F. Supp. 2d 1276 (D.N.M. 2008) ........................................................................................ 7

Vaszlavik v. Storage Technology Corp.,
    2000 WL 1268824 (D.Colo. March 9, 2000) ......................................................................... 21

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................................................................................ 14

**Other Authorities**

Rubenstein, Newberg on Class Actions § 15:56 (5th ed. 2016) ...................................... 6, 8, 20, 22

Plaintiff Michael Bahnmaier ("Plaintiff") submits this memorandum of law in support of his Unopposed Motion for Attorneys' Fees and Expenses and for a Service Award to Representative Plaintiff (the "Motion"). Plaintiff submits the Motion in accordance with the Court's Order Conditionally Certifying a Settlement Class, Granting Preliminary Approval of the Class Action Settlement, Approving the Form and Manner of Notice, and Scheduling a Final Approval Hearing (Dkt. No. 33) ("Preliminary Approval Order"), entered on February 10, 2021. The relief sought in the Motion is unopposed by Defendant Wichita State University ("Defendant" or "WSU").

## I.    INTRODUCTION

As detailed below, the Motion should be granted because the attorneys' fees sought are reasonable under the circumstances and pursuant to relevant case law, the litigation expenses incurred were reasonable and necessary to the prosecution of this case, and the service award is reasonable and appropriate to compensate the named Plaintiff for his work in this action on behalf of the Class.  In addition, the $325,000 total sum earmarked for Plaintiff's attorneys' fees *and* expenses is an amount the parties negotiated in arm's length, separate and apart from the benefits made available to members of the Settlement Class ("Class Members" or "Settlement Class Members").  Indeed, attorneys' fees and expenses were not discussed until *after* all other material terms of the Settlement had been agreed upon.  Further, the separate payment of attorneys' fees and expenses will *not* decrease the relief being made available to the Class under the Settlement.

In an expeditious manner, Class Counsel, with the assistance of local counsel,[1] achieved a Settlement that provides considerable relief, including: (1) payments of $20.00 per hour for up to

---

[1] Class Counsel and local counsel are collectively referred to herein as "Plaintiff's Counsel" or "Counsel."

three (3) hours of time spent dealing with issues relating to the Data Incident; and (2) reimbursement of up to $300.00 for out-of-pocket costs used to mitigate damage due to the Data Incident and/or for losses associated with any identity theft or misuse of PII.  If not for Plaintiff's Counsel's willingness to pursue this case on a contingency basis with no guarantee of recovering their time and advanced expenses, Class Members would not realize these significant, material benefits. Plaintiff's Counsel's considerable skill, experience, national reputation in class action and data breach litigation, the results obtained, and the efficient manner in which the results were achieved support the requested award of attorneys' fees and expenses.

For the reasons set forth below, Plaintiff respectfully requests that this Motion be granted.

## II.      NATURE OF THE LITIGATION AND PROCEDURAL HISTORY

This case involves a putative class action against WSU relating to a data security breach that potentially exposed the PII of former and current WSU students and employees. Specifically, on March 6, 2020, WSU announced that between December 3, 2019 and December 5, 2019 "an unauthorized person gained access" to a "computer server that WSU used to operate various student and employee web portals."  The breached server contained information about certain WSU students and employees, including names, email addresses, dates of birth, and Social Security numbers.

On May 14, 2020, Plaintiff, a former WSU student, filed his Complaint alleging, among other things, that Defendant failed to take adequate measures to protect his and other putative class members' PII and failed to disclose that WSU's systems were susceptible to a cyber-attack.  *See* Dkt. No. 1.  Rather than committing to protracted litigation, counsel for the parties began to exchange information and discuss the possibility of resolving the case shortly after WSU was served. Accordingly, WSU sought and was granted three (3) extensions of time to answer while

the parties conferred about possible settlement terms. *See* Dkt. Nos. 10, 13, and 14 (granting Defendant's unopposed motions to extend time to answer).  On August 19, 2020, WSU ultimately filed a Motion to Dismiss Plaintiff's Class Action Complaint.  Dkt. No. 18.  During this time, the parties continued to make meaningful progress towards reaching a settlement. On October 30, 2020, following multiple exchanges of information and negotiations of terms, the parties were able to reach a settlement in principle. *Id.* Thereafter, the parties negotiated the remaining terms, circulating drafts of the settlement agreement and its exhibits back and forth.  The agreement was finalized and executed on January 12, 2021. The parties finalized and executed an Amended Settlement Agreement (the "Settlement Agreement" or "Agreement" or "Settlement") on February 9, 2021.[2]

## III.   SUMMARY OF RESULTS ACHIEVED

After months of negotiation, Class Counsel obtained a robust Settlement that provides significant relief to Settlement Class Members.  As an initial matter, the speedy resolution of data breach class actions is in the best interests of the Class because it allows Class Members to take advantage of settlement benefits, including benefits that compensate Settlement Class Members for taking steps to protect their identities moving forward. *See* Declaration of William B. Federman in Support of Plaintiff's Unopposed Motion for Attorneys' Fees and Expenses and for a Service Award to Representative Plaintiff ("Federman Decl." or "Federman Declaration"), attached hereto as **Exhibit 1**, at ¶ 18.  As such, the results achieved in this case are even more significant in that they were achieved relatively quickly. The Settlement provides for cash payments to Class

---

[2] All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Settlement Agreement (Dkt. No. 33-1).

Members that will compensate them for lost time and a variety of expenses associated with the potential exposure of their PII.

First, under the Agreement, Settlement Class Members are eligible to receive payments of $20.00 per hour for up to three (3) hours of time spent dealing with issues relating to the Data Incident. *See* Settlement Agreement (Dkt. No. 33-1) at ¶ 2.1.2. To receive this benefit, Class Members need only attest that any claimed lost time was spent related to the Data Incident and provide a written description of how the claimed lost time was spent related to the Data Incident. *Id.*

Second, pursuant to the Agreement, Settlement Class Members are *also* eligible for reimbursement of up to $300.00 for out-of-pocket costs to mitigate damage due to the Data Incident and/or for losses associated with any identity theft or misuse of PII. *Id.* at ¶ 2.1.1.[3] Examples of out-of-pocket costs that are eligible for reimbursement through the Settlement include (but are not limited to): (i) costs of credit report(s) purchased by Class Members; (ii) costs  of credit  monitoring and identity  theft protection; (iii) unreimbursed bank fees or card fees and unreimbursed charges from banks or credit card companies (iv) cell phone minutes, internet usage charges, and text message charges where such charges are incurred as a result of the Data Incident; (v) interest on payday loans incurred solely as a result of the Data Incident; and (v) other losses incurred that are fairly traceable to the Data Incident. *Id.* The "fairly traceable" standard will allow Class Members to be compensated for a broad range of harm likely to flow from the Data Incident. Class Counsel insisted that the Settlement even reimburse Class Members who purchased credit monitoring and identity theft protection *after* notices of the Settlement were sent

---

[3] Claims made for lost time can be combined with reimbursement for out-of-pocket expenses but are subject to the same $300.00 cap for all Settlement Class Members.

to Class Members.  *Id.*; *see also* Federman Decl. at ¶18. Thus, in addition to reimbursing Class Members for costs already expended, the Settlement provides Class Members who had not purchased credit monitoring or identity theft protection prior to receiving the notice of Settlement with the opportunity to purchase such monitoring and/or protection knowing that the Settlement would reimburse them for costs of these services.  *Id.*

Taken together, the Settlement provides substantial value to Class Members. Indeed, the Settlement makes millions of dollars in cash payments available to the Class.  As explained above, *all* Settlement Class Members are eligible for cash payments of $20.00 per hour for up to three (3) hours for time spent dealing with issues relating to the Data Incident *plus* reimbursement for out-of-pocket costs to mitigate damage due to the Data Incident and/or for losses associated with any identity theft or misuse of PII up to $300.00. *See* Settlement Agreement at ¶ 2. These amounts are well within the range of fair, reasonable, and adequate, particularly when considered in light of reported average out-of-pocket expenses attributable to a data breach. According to a research study sponsored by Experian Data Breach Resolution and conducted and reported by Ponemon Institute, "[e]ighty-one percent of respondents who were victims of a data breach did not have any out-of-pocket costs" and nine percent had less than $10 in out-of-pocket costs. *See* Dkt. No. 37-2 at 7, 18.  And for those respondents who incurred out-of-pocket costs, the average amount was $38.00. *Id*. at 7.  As such, the economic recovery available under the Settlement is objectively substantial.

Moreover, the Agreement provides for a claims-made Settlement, under which the amounts payable to Settlement Class Members do *not* diminish based on the number of claim forms that are submitted. Nor do the Settlement benefits diminish based on the award of attorney's fees and expenses.  Indeed, while WSU has agreed to pay Plaintiff's Counsel's reasonable attorneys' fees

and expenses, such payment is *separate from and in addition to* the relief provided to the Class. Further, Plaintiff's Counsel's requested attorneys' fees of $325,000 represent a small percentage (approximately 0.25%) of the total relief made available to class members through the settlement.

## IV.   LEGAL STANDARDS

In a case like this one, in which the parties reach a settlement with a claims-made structure that has no upper cap on relief, courts evaluate attorney fee requests primarily by using what is known as the lodestar method.  This is because a claims-made settlement has an indefinite total value and is not typically capable of being characterized as a true "common fund" for the purpose of a percentage-of-the-fund fee analysis.  *See Rosenbaum v. MacAllister*, 64 F.3d 1439, 1447-48 (10th Cir. 1995) (percentage award not warranted where settlement provides common benefit but does not create common fund); Rubenstein, Newberg on Class Actions § 15:56 (5th ed. 2016) ("Newberg") (noting that "[c]laims-made settlements do not create a common fund").  All fees and costs awarded here, moreover, will be paid separately by WSU and will not reduce the amount paid to the Class in any way.

The formula for determining reasonable attorneys' fees is straightforward: the district court first multiplies (1) the hours Plaintiff's Counsel reasonably expended in furtherance of the litigation by (2) Plaintiff's Counsel's reasonable hourly rates. *See, e.g., Garcia v. Tyson Foods, Inc.,* 2012 WL 5985561, at *2 (D. Kan. Nov. 29, 2012), *aff'd*, 770 F.3d 1300 (10th Cir. 2014); *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998); *Flitton v. Primary Residential Mortgage, Inc.*, 614 F.3d 1173, 1176 (10th Cir. 2010). A lodestar enhancement in the form of a multiplier may be appropriate based on, *inter alia*, the results achieved, counsel's risk in prosecuting the case, and the complexity of the case.  *See, e.g., In re Miniscribe Corp.*, 309 F.3d 1234, 1245 (10th Cir. 2002) (approving a 2.57 multiplier where "results achieved were sufficiently

extraordinary"); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (approving a 1.18 multiplier that the Honorable John W. Lungstrum referred to as "imminently reasonable" given "the risks associated with counsel taking on this case").

Even while utilizing the lodestar method, the Court maintains "broad discretion when awarding attorney fees[.]" *U.S. ex rel. Silva's Excavation, Inc. v. Jim Cooley Const., Inc.*, 572 F. Supp. 2d 1276, 1278 (D.N.M. 2008). In particular, the court should consider whether the lodestar method yields an appropriate fee award in light of the *Johnson* factors, endorsed by the Tenth Circuit for courts applying federal fee jurisprudence. *See, e.g.*, *Chieftain Royalty Co. v. XTO Energy Inc.,* No. CIV-11-29-KEW, 2018 WL 2296588, at *2 (E.D. Okla. Mar. 27, 2018) ("XTO Energy") (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). The *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-21. The Tenth Circuit had recognized that all these factors are "rarely applicable" in one case. *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 456 (10th Cir. 1988). Thus, the overarching principle is that the court has discretion to award fees in an amount commensurate with the degree of benefit the settlement makes available to the class. *Id.*

## V.     THE REQUESTED ATTORNEYS' FEE AWARD IS RESONABLE AND SHOULD BE AWARDED

The negotiation of fee agreements is generally encouraged. *See Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation.

Ideally, of course, litigants will settle the amount of a fee."). Here, "the parties negotiated and agreed upon the attorneys' fee provision in the Settlement,"—but only *after* the substantive terms of the Settlement were finalized, Federman Decl., ¶ 19—so "regardless of the size of the fee award, class members who apply for recovery under the terms of the Settlement will receive the same benefit; the fee award does not reduce the recovery to the class." *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 CIV. 5173 (RPP), 2008 WL 1956267, at *15-16 (S.D.N.Y. May 1, 2008). An independently negotiated fee award gives the defendant an incentive to bargain aggressively and thus diminishes the danger of conflicts of interest between attorneys and class members, greatly reducing the Court's fiduciary role in overseeing the award. *Mirakay v. Dakota Growers Pasta Co.*, No. 13-CV-4429 JAP, 2014 WL 5358987, at *11 (D.N.J. Oct. 20, 2014); *see also Lane v. Page*, 862 F. Supp. 2d 1182, 1258 (D.N.M. 2012) (approving fees that were negotiated separately and that did not diminish class recovery).

### A.      Counsel's Fee Request is Appropriate Under the Lodestar Method

The lodestar analysis confirms that Plaintiff's Counsel's total request of $325,000 to compensate for both attorneys' fees and reimbursement of litigation expenses is reasonable. Counsel spent significant time and effort thoroughly investigating the claims, assessing the strengths and weaknesses of the claims and defenses and effectively and efficiently settling the Action on terms highly favorable to the Settlement Class. Indeed, Plaintiff's Counsel spent hundreds of hours prosecuting this action. As discussed *supra*, Section III, this work led to the excellent result achieved here and "produced a beneficial result for the class." *See* 2003 Advisory Committee Note, Fed. R. Civ. P. 23(h) (noting propriety of awarding fees to counsel who acted for the class before certification but were not appointed class counsel); *see also* Newberg § 15.22 (recognizing that non-class-counsel may be entitled to recover fees). "Where a plaintiff has

obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

### 1.   The Hours Expended by Counsel Were Necessary and Reasonable

Plaintiff's Counsel devoted a significant amount of time and effort to this litigation, often to the exclusion of any other cases.  The work performed by Counsel was necessary to the effective prosecution of this action and to the achievement of this highly favorable Settlement.

As described in the Federman Declaration, the work performed by Plaintiff's Counsel included but is not limited to: (1) investigating the Data Incident; (2) interviewing multiple prospective Class Members who contacted Counsel about the Data Incident; (3) researching potential claims and defenses; (4) drafting and filing the class action complaint on May 14, 2020; (5) maintaining ongoing communications with Class Members to keep them apprised of the developments with the litigation and to secure their helpful insights; (6) researching and drafting an opposition to Defendant's motion to dismiss; (7) participating in months of settlement negotiations with Defendant's counsel, including researching and presenting information in support of Plaintiff's case while considering and vetting information supplied by Defendant in support of their defenses; (8) preparing and conferring with Defendant's counsel on multiple versions of settlement terms before reaching agreement on a settlement in principle; (9) working with Defendant to jointly draft the Settlement Agreement and its exhibits; (10) preparing, filing, and arguing in support of the motion for preliminary approval of the Settlement; (11) working with the Claims Administrator in supervising the issuance of Settlement Notice; (12) assisting in answering questions from Class Members regarding the Settlement and the submission of claims; and (13) drafting and filing the motion for final approval of the Settlement. *See* Federman Decl. at ¶ 5. In total, Plaintiff's Counsel spent over 371 hours prosecuting this action from inception

through May 11, 2021.[4] *Id.* at ¶ 8.  That total does *not* include the time expended by Plaintiff's Counsel in preparing the present Motion, *nor* does it include reductions made in the exercise of billing judgment, *nor* does it include the additional hours that Plaintiff's Counsel will continue to work even after Final Approval.  *Id.*  In Class Counsel's professional opinion, all of the time being submitted to the Court is of the kind and character that Counsel would bill to a fee-paying client and is reasonable in light of the complexity of this litigation. *Id.* at ¶ 4.

Moreover, Counsel staffed this case efficiently from the outset, primarily utilizing two attorneys experienced in data breach class actions: William B. Federman and A. Brooke Murphy. *See id.* at ¶ 6 (chart).  Mr. Federman and Ms. Murphy were both actively managing this litigation from inception through the present. *Id.*  Importantly, Ms. Murphy, who bills at an appreciably lower rate than Mr. Federman, was assigned the more time-consuming yet critical tasks such as substantive researching and drafting.  These staffing decisions resulted in Plaintiff's Counsel billing considerably less on the case than if more senior attorneys had handled Ms. Murphy's tasks or if more attorneys had been involved.

Accordingly, Plaintiff respectfully submits that the hours reflected in Plaintiff's lodestar are reasonable and were necessary to achieving the excellent Settlement for the Class.

### 2.   Counsel's Hourly Rates Are Reasonable

The hourly rates included in Plaintiff's Counsel's lodestar are reasonable and in line with billings rates that are regularly approved by courts in and around this area for complex cases such as the present case.

---

[4] Plaintiff's Counsel are prepared to provide the Court with Counsel's detailed billing entries for *in camera* review should the Court request it.

Here, Plaintiff's Counsel are highly experienced attorneys who have successfully prosecuted numerous data breach class actions, consumer class actions, and other complex litigation matters.  Federman Decl. at ¶ 10 & Exhs. A-C.  Counsel's lodestar reflects the attorneys' usual billing rates.  *Id.* at ¶¶ 6-7.  Plaintiff's Counsel's billing rates have been evaluated and found to be reasonable by numerous courts in and around this Circuit.  *See, e.g., In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.,* No. 17-ml-2792-D (W.D. Okla., Jun. 11, 2020) (Dkt. No. 256), slip op. at 15 (finding that Federman & Sherwood's billing rates "are reasonable" for the "geographic area[] in comparable cases, and Class Counsel's affidavits support the request's reasonableness") *aff'd,* 2021 WL 1825685, at *12 (10th Cir. May 7, 2021); *Nakkhumpun v. Taylor*, No. 12-CV-01038-CMA-CBS, 2016 WL 11724397, at *5 (D. Colo. June 13, 2016) (finding Federman & Sherwood's billings reasonable and approving fee request); *Stanaford v. Genovese*, No. 9:13-CV-80923 (KLR), 2015 WL 4930209, at *1 (S.D. Fla. Aug. 17, 2015) (same); *Friedman v. Quest Energy Partners LP*, No. CIV-08-1025-M, 2010 WL 4925133, at *6 (W.D. Okla. Nov. 29, 2010) (same).

Indeed, courts in the Kansas City area and around the Midwest have awarded attorneys' fees to lawyers of like skill, reputation, and experience to that of Plaintiff's Counsel at hourly rates commensurate with—or in excess of—the rates Counsel now request.  *See, e.g.,  Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 222 (W.D. Mo. 2017) (approving fee award in consumer class action with rates ranging from $261 to $897 per hour and finding that the rates were "not dissimilar to those hourly rates charged in the Kansas City area"); *Abbott v. Lockheed Martin Corp*., 2015 WL 4398475, at *3 (S.D. Ill. July 17, 2015) (approving attorneys' fees in an employee retirement benefits class action and awarding an hourly rate of $974 per hour for attorneys with 25 or more years of experience, $826 per hour for attorneys with 15-24 years of

experience, $595 per hour for attorneys with 5-14 years of experience, $447 per hour for attorneys with 2-4 years of experience, and $300 per hour for paralegals).

Further, Plaintiff's Counsel's rates are reasonable when compared with the rates commonly approved in data breach class actions. *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *26 (N.D. Cal. July 22, 2020) (finding billing rates—which ranged from $450 to $900 for partners, $160 to $850 for non-partner attorneys, and $50 to $440 for paralegals and staff—are "reasonable and in line with amounts charged in similar cases") (discussing cases); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *17 (N.D. Cal. Aug. 17, 2018) (approving hourly billing rates, which ranged from $400 to $970 for partners, $185 to $850 for non-partner attorneys, and $95 to $440 for paralegals, law clerks, and litigation support staff). Because data breach class actions are a highly specialized area of law, the Court's analysis is informed by these national rates approved in other data breach actions. *See Jane L. v. Bangerter,* 61 F.3d 1505, 1510 (10th Cir. 1995) (noting that, when "special skills" are required for unique litigation, the market for reasonable hourly rates may be expanded); *Jeffboat LLC. v. Director, Office of Workers' Comp Programs*, 553 F.3d 487, 490 (7th Cir. 2009) (holding that it is appropriate to view a relevant community as a community of practitioners where "the attorneys practicing are highly specialized and the market for legal services in that area is a national market"). Even if restricted to the Kansas City area, Plaintiff's Counsel's billing rates are comparable to rates approved by this Court in data breach class actions. *See, e.g., Hapka v. CareCentrix, Inc.,* No. 2:16-CV-02372-KGG, 2018 WL 1879845, at *1 (D. Kan. Feb. 15, 2018) (finding class counsel's hourly rates, which ranged from $375 to $865 for attorneys and between $225 to $275 for paralegals, were "reasonable for complex class action and data breach litigation in the Kansas City area").

### 3.   The Modest Multiplier Supports the Requested Fee Award

Courts in the Tenth Circuit commonly approve lodestar enhancements in the form of multipliers to compensate counsel for the high risk of contingent representation in complex class actions.  *See In re Miniscribe Corp.,* 309 F.3d 1234, 1245 (10th Cir. 2002) (affirming fee award based on a lodestar multiplier of 2.57); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (approving a 1.18 multiplier the court referred to as "imminently reasonable" given "the risks associated with counsel taking on this case").  Here, the modest lodestar multiplier further supports the reasonableness of the requested fee and expense award.

The total amount of attorneys' fees and expenses incurred by Plaintiff's Counsel in connection with the prosecution of this action is $215,026.89,[5] not including time spent preparing this application for attorneys' fees and not including hours reduced or excluded in the exercise of billing judgment.  *See* Federman Decl. at ¶ 15.  Thus, the requested award of $325,000 represents a very measured multiplier of 1.51 times Plaintiff's Counsel's cumulative lodestar.  *See Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 WL 1867861, at *8 (D. Colo. Apr. 22, 2015) (holding that the requested fee award representing a lodestar multiplier of 1.37 was "*significantly lower* than lodestar multipliers that Colorado federal courts and other courts consistently have approved in other class action cases.") (emphasis added).  Courts in this Circuit, and throughout the country, routinely grant multipliers ranging between 2 to 5 times lodestar. *See, e.g.*, *XTO Energy*, 2018 WL 2296588, at *10 (holding that multiplier of 2.58 "is *well within* the range of multipliers approved in the Tenth Circuit, and other circuits," and collecting cases) (emphasis added); *Mishkin v. Zynex, Inc.,* 2012 WL 4069295 at *2 (D. Colo. Sep. 14, 2012) (collecting cases

---

[5] Of this amount, $210,974.50 are Plaintiff's Counsel's attorneys' fees and $4,052.39 are litigation expenses.

in the Tenth Circuit that approved multipliers ranging from 2.5 to 4.6); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051-52 &  n.6 (9th Cir. 2002) (awarding multiplier of 3.65 and citing a survey of class settlements showing that most multipliers range from 1.0 to 4.0); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ("Most lodestar multiples awarded in cases like this [i.e., complex cases] are between 3 and 4.") (collecting cases); *In re Davita Healthcare Partners, Inc.*, No. 12-CV-2074-WJM-CBS, 2015 WL 3582265, at *5 (D. Colo. June 5, 2015) (awarding fees that resulted in a multiplier of 3 and finding it "in line with the multipliers awarded in similar cases").

The comparatively small 1.51 multiplier requested here will be reduced by the work Plaintiff's Counsel will continue to provide on behalf of the Class.  Indeed, this multiplier does not reflect the hours Plaintiff's Counsel will spend preparing for and attending the final approval hearing, nor does it include additional services that Counsel will continue to provide through final approval and beyond, including overseeing the Claims Administrator's review of claims, answering Class Members' questions, and supervising the distribution of Settlement benefits.  The multiplier will at least partially, if not largely, be consumed by this remaining work.

Considering the favorable result achieved here by Plaintiff's Counsel, that Counsel's lodestar is decidedly reasonable when viewed against lodestars awarded in comparable actions, and the fact that the award of attorneys' fees will in no way diminish the benefits provided to Class Members, Plaintiff respectfully submits that approving the $325,000 fee and expense request is appropriate and warranted.

**B.    The Johnson Factors Support the Requested Award of Attorneys' Fees and Reimbursement of Expenses**

To confirm the presumptively valid lodestar amount, courts in this Circuit traditionally evaluate attorneys' fee requests in light of the 12 factors identified in *Johnson v. Georgia Highway*

*Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (the "*Johnson* factors").  As discussed in Section IV *supra*, courts recognize that all of these factors are "rarely . . . applicable" in one case.  *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 456 (10th Cir. 1988).  Instead, numerous courts have recognized that in evaluating the various *Johnson* factors, the greatest weight should be given to the benefits that the settlement makes available to the class. *Anderson v. Merit Energy Co.*, No. 07-CV-00916, 2009 WL 3378526, at *4 (D. Colo. Oct. 20, 2009); *Brown,* 838 F.2d at 456.

### 1.   Time and Labor Involved

Data breach class actions are inherently complicated, and this action was no exception.  *See* Section V.B.2, directly below.  Despite the risks and unique challenges this case posed, Plaintiff's Counsel spent nearly 400 hours prosecuting the case (excluding hours reduced or excluded in the exercise of billing judgment and time spent preparing this application for attorneys' fees). All of this time and expense was advanced without any guarantee of recoupment, and necessarily prevented Counsel from devoting those hours to other matters. This factor supports the requested award.

### 2.   The Novelty and Difficulty of the Questions

There is no dispute that this case was complex. Not only are data breach class actions notoriously technical, complicated, and in an emerging area of law, but this action presented further unique challenges. In particular, this action involved issues of Article III standing for data breach victims (an issue not yet decided by the Tenth Circuit), the duty of care standard owed to students and employees after collecting and storing their personal information, whether WSU as a publicly funded institution was immune from liability, Class Members' entitlement to relief under the Kansas Tort Claims Act, whether a data breach class could be certified (another issue not yet decided by the Tenth Circuit), and what amount of damages, if any, are recoverable to Class

15

Members as a result of a third party gaining unauthorized access to their personal information (a highly contested and expert-intensive issue in data breach actions). *See* Dkt. No. 19. This factor supports the requested award.

### 3. The Skill Requisite to Perform the Legal Service Properly

As demonstrated in the Federman Declaration and the exhibits attached thereto, all of the lawyers involved in this litigation are highly skilled. Plaintiff's Counsel have decades of experience litigating complex matters, including consumer class actions. *See* Federman Decl. at ¶ 10 & Exhs. A-C. Counsel have successfully prosecuted and settled numerous data breach class actions, consumer class actions, and other complex litigation throughout the country, and the firm has a strong reputation for effectively litigating such cases. *Id.* This factor supports the reasonableness of the requested award.

### 4. The Preclusion of Other Employment by the Attorney Due to the Acceptance of the Case

The hours that Plaintiff's Counsel committed to this case for over more than a year precluded Counsel from using that time to work on other cases. *See* Federman Decl. at ¶ 12. Thus, Plaintiff's Counsel's work on this case resulted in lost employment opportunities. Because Plaintiff's Counsel experienced opportunity costs as a result of prosecuting this case, this factor supports the requested award.

### 5. The Customary Fee

Plaintiff's Counsel's lodestar reflects the attorneys' usual billing rates, which have been evaluated and approved by numerous courts. *See* Section V.A.2, *supra*. Moreover, Counsel's billing rates are comparable to the billing rates awarded in complex class actions in and around this area. *Id.* Plaintiff's Counsel's billing rates are similarly commensurate with billing rates that

are typically deemed reasonable in data breach class actions. *Id.* This factor supports the requested award.

### 6.   Whether the Fee is Fixed or Contingent

Plaintiff's Counsel took this matter on an entirely contingency fee basis and fronted all of the litigation costs. *See* Federman Decl. at ¶ 12. The risks of non-recovery, which were faced by Plaintiff's Counsel from the outset of this litigation, are real and justify the fee request. Indeed, Counsel stood to recover no amount for the time and expenses incurred unless the case succeeded. These facts support an upward multiplier enhancement of Plaintiff's Counsel's lodestar. *Hensley*, 461 U.S. 424, 448-49 (noting that "on many occasions awarding counsel fees that reflect the full market value of their time will require paying more than their customary hourly rates" because of the time-value of money and delay in payment). In this case, Counsel's requested award amounts to a relatively modest multiplier of 1.51, which is on the lower end of multipliers routinely approved for class counsel in this Circuit. *See* Section V.A.3, *supra*. This factor militates in favor of Counsel's requested award.

### 7.   Time Limitations Imposed by the Client or Other Circumstances

As discussed in Plaintiff's Motion for Final Approval of the Settlement (Dkt. No. 37) at 12, the longer this case went unresolved, the longer that class members' personal information was at risk. Counsel's efficient and expeditious resolution of this litigation and timely provision of the Settlement benefits—including the reimbursement for credit monitoring and identity theft protections, even if purchased after Class Members were notified of the Settlement—is particularly valuable. Indeed, such protections can help detect and prevent identity theft and fraud before misuse occurs and can assist Class Members in promptly addressing any issues that arise. *Id*. This factor supports the reasonableness of the requested award.

**8.   The Amount Involved and the Results Obtained**

Plaintiff's Counsel obtained a robust, meaningful Settlement that provides Class Members with compensation for lost time and out-of-pocket expenses, including reimbursement for the purchase of services that protect their personal information now and in the future. Specifically, all 443,000 Class Members are eligible for cash payments of $20.00 per hour for up to three (3) hours of time spent dealing with issues relating to the Data Incident, *plus* reimbursement for out-of-pocket costs to mitigate damage due to the Data Incident and/or for losses associated with any identity theft or misuse of their personal information up to $300.00.   *See* Section III, *supra*. Accordingly, the Settlement makes several million dollars available to the Class.[6]   This factor clearly supports Counsel's application.

**9.   The Experience, Reputation, and Ability of the Attorneys**

As discussed above in Section V.B.3, Plaintiff's Counsel are highly skilled lawyers who specialize in litigating complex class actions, including data breach class actions, and who have established a strong reputation in such cases.   *See* Federman Decl. at ¶ 10 & Exhs. A-C.  Indeed, Class Counsel have been specifically recognized for their work in furtherance of achieving favorable class action settlements. *See, e.g.,* Exhibit C to the Federman Declaration, *Friedman v. Quest Energy Partners LP*, Case No. CIV-08-936-M, (W.D. Okla. Nov. 29, 2010) hearing transcript at 19-20 (commending Federman & Sherwood during a settlement fairness hearing and stating: "Recovering what you were able to recover in terms of amounts out there, it is fairly amazing to the Court that you have gotten to this point."); *id.* at 32 (thanking Federman &

---

[6]   Indeed, were every Settlement Class Member to submit a valid claim for the maximum reimbursement of $300.00, the Settlement would provide more than $130 million in aggregate cash payments to the Class.

Sherwood "for doing the very best job I think possible, under an extreme set of difficult circumstances, to reach a resolution"). Accordingly, this factor supports the fee application.

### 10. The Undesirability of the Case

As discussed above in Section V.B.2, this case presented numerous complex issues, including issues unguided by Tenth Circuit precedent. This uncertainty is relevant to Plaintiff's Counsel's ability to ultimately recover their fully contingent attorneys' fees and advanced expenses, which informs the desirability of the case. This factor supports the reasonableness of requested fees.

### 11. The Nature and Length of the Professional Relationship with the Client

Because "[t]he meaning of this factor . . . and its effect on the calculation of a reasonable fee has always been unclear[,] . . . [c]ourts applying the *Johnson* factors typically state that this particular standard is irrelevant or immaterial." *Peterson v. Mortgage Sources Corp.*, 2011 WL 3793963, at *12 (D. Kan. Aug. 25, 2011) (citing *Lucas v. Kmart Corp.*, 2006 WL 2729260, at *7 (D. Colo. July 27, 2006)). While this factor is of limited import, its application here does not diminish the reasonableness of the requested award.  Indeed, despite having no pre-existing relationship, Class Counsel and Plaintiff Bahnmaier were able to effectively work together in prosecuting this litigation on behalf of the Class. Thus, even if considered, this factor supports Counsel's fee application.

### 12. Awards in Similar Cases

As noted in Sections V.A.2-3, *supra*, the awards in similar class actions are commensurate with, or in excess of, the combined fee and expense award requested in this case. *See, e.g.*, *Hapka v. CareCentrix, Inc.,* No. 2:16-CV-02372-KGG, 2018 WL 1879845, at *1 (D. Kan. Feb. 15, 2018) (finding class counsel's hourly rates, which ranged from $375 to $865 for attorneys and between

$225 to $275 for paralegals, were "reasonable for complex class action and data breach litigation in the Kansas City area"); *see also XTO Energy*, 2018 WL 2296588, at *10 (holding that multiplier of 2.58 "is *well within* the range of multipliers approved in the Tenth Circuit, and other circuits," and collecting cases) (emphasis added).  Accordingly, this factor supports the reasonableness of the requested award.

### C.   Reaction from Class Members Supports the Requested Award of Attorneys' Fees and Reimbursement of Expenses

Although not specifically cited as a factor for consideration by the Tenth Circuit, courts recognize the significance of the Settlement Class Members' reaction to the request for attorneys' fees and expenses.  *See Anderson,* 2009 WL 3378526, at *4 ("The absence of any Class members' objection is an additional factor that supports this Court's approval of the requested attorneys' fees."); *Millsap v. McDonnell Douglas Corp*., No. 94-CV-633-H(M), 2003 WL 21277124, at *14 (N.D. Okla. May 28, 2003) (finding that "the small number of objections to the attorney fees award supports the appropriateness of an award" where three class members out of 1,074 filed objections to the fee request).  Here, despite sending Notices to more than 443,000 Class Members, not a single member of the Settlement Class has filed an objection to the $325,000 award requested by Counsel.  Therefore, Plaintiff respectfully submits that the absence of any objections to the request for attorneys' fees and expenses strongly supports Counsel's application.

## VI.   PLAINTIFF'S COUNSEL'S EXPENSES SHOULD BE APPROVED

The requested award of $325,000 will not only compensate Plaintiff's Counsel for their attorneys' fees, but it will also reimburse Counsel for the out-of-pocket expenses they incurred during the prosecution of this action. It is well-established that class counsel are entitled to reimbursement of expenses advanced for the class.  *See* Newberg § 16:1; *In re Williams Sec. Litig.- WCG Subclass*, 558 F.3d 1144, 1147 (10th Cir. 2009) ("Rule 54 creates a presumption that the

district court will award costs to the prevailing party."); *see also* Vaszlavik v. Storage Technology Corp., 2000 WL 1268824, at *4 (D.Colo. March 9, 2000) (awarding $309,252 in expenses and recognizing that attorneys who secure benefits for the class are "entitled to receive reimbursement of all reasonable costs incurred").

Here, Plaintiff's Counsel spent a total of $4,052.39 in out-of-pocket litigation expenses. The Federman Declaration itemizes the various categories of expenses incurred during the prosecution of this action. *See* Federman Declaration at ¶ 13.  The majority of the expenses were for filing fees, service of process, photocopying, postage, and online factual and legal research. *Id*.  These expenses were necessary to the action and were essential to enable Counsel to achieve the Settlement for the Class. *See Aragon v. Clear Water Prod. LLC*, No. 15-CV-02821-PAB-STV, 2018 WL 6620724, at *7 (D. Colo. Dec. 18, 2018) (holding that these are "the type of costs normally billed to clients" and are appropriate for reimbursement).

Because the expenses incurred by Plaintiff's Counsel are of the type routinely approved in class actions and were essential to the successful prosecution and resolution of the litigation, the Court should grant reimbursement of the expenses. As noted above, the requested expenses will be paid from the total $325,000 fee and expense request.

## VII.   THE REQUESTED SERVICE AWARD FOR PLAINTIFF SHOULD BE APPROVED

The service provided by Plaintiff and Class Representative Bahnmaier in this action should not go without recognition. While service as a representative plaintiff is not a profit-making position, courts have held that it is appropriate to make modest payment in recognition of the services that such plaintiffs perform in successful class litigation.  *See Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P*., 888 F.3d 455, 467 (10th Cir. 2017) ("Courts have recognized that an award may be appropriate to provide an incentive to act as a named plaintiff.");

Newberg § 17:1 ("[T]he payments aim to compensate class representatives for their service to the class and simultaneously serve to incentivize them to perform this function").

The Settlement here recognizes this principle by providing a $1,500 award to Plaintiff for his services on behalf of the Class.  Plaintiff initiated and oversaw this litigation for the benefit of the Class, and it is due to Plaintiff's services that the favorable Settlement was obtained. Among other things, Plaintiff answered detailed questionnaires and provided essential information to Plaintiff's Counsel; collected documents and other evidence that supported the claims alleged in this case; agreed to face invasive and time consuming discovery, including depositions, if necessary; reviewed pleadings and coordinated with Plaintiff's Counsel on the status of, and strategy for, the action; conferred with Plaintiff's Counsel as to the settlement negotiations; and considered and approved the Settlement terms on behalf of the Class. *See* Federman Decl. at ¶ 17.

The time and effort Plaintiff committed to this action was of great help in bringing about the highly beneficial settlement. The amount requested is reasonable and should be approved by the Court.

## VIII.   CONCLUSION

For the reasons set forth herein and in Plaintiff's Motion for Final Approval of the Settlement (Dkt. No. 37) and exhibits thereto, Plaintiff respectfully requests that this Court award Plaintiff's Counsel the payment of $325,000 in attorneys' fees and expenses, and approve the service award of $1,500 to Plaintiff.

Dated: May 26, 2021                        Respectfully Submitted,

                                           /s/ Brandon J. B. Boulware
                                           Brandon J.B. Boulware (KS # 25840)
                                           BOULWARE LAW LLC
                                           1600 Genessee Street, Suite 416
                                           Kansas City, MO 64102

Tel: (816) 492-2826
Email: Brandon@boulware-law.com

William B. Federman (admitted *pro hac vice*)
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
-and-
212 W. Spring Valley Road
Richardson, TX 75081
(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com

**Counsel for Plaintiff and the Putative Class**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 26, 2021, the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on the following ECF-registered counsel of record.

/s/ Brandon J. B. Boulware
Brandon J.B. Boulware