IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MICHAEL BAHNMAIER, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WICHITA STATE UNIVERSITY,<br><br>　　　　Defendant. | Case No. 2:20-cv-02246-JAR-TJJ |

**ORDER ON FEES AND EXPENSES**

The Court previously approved the class-action settlement between representative Plaintiff Michael Bahnmaier and Defendant Wichita State University ("WSU") relating to a data-breach incident announced by WSU in March 2020 as fair, reasonable, adequate, and in the best interests of the Settlement Class under Fed. R. Civ. P. 23(e), and certified the Settlement Class solely for purposes of the Settlement pursuant to Rules 23(a) and (b) (Doc. 43). The Court also approved the payment of a service award to Plaintiff in the amount of $1,500 as fair and reasonable, but took under advisement Class Counsel's request for $325,000 for attorney fees and reimbursement of their litigation costs and expenses pending *in camera* review of billing and expense records.

Having considered Plaintiff's Unopposed Motion for Attorneys' Fees and Expenses and for a Service Award to Representative Plaintiff (Doc. 38), Class Counsel's arguments at the final approval hearing on July 27, 2021, and the billing and expense records reviewed *in*

*camera*, the Court grants in part and denies in part the fee motion, finding as follows:

1. "Under [Fed. R. Civ. P.] Rule 23(h), . . . in a certified class action the Court may award reasonable attorneys' fees and nontaxable costs which are authorized by law or the parties' agreement."[1] "The Court has broad authority in awarding attorneys' fees in class actions."[2] When awarding attorneys' fees under a class action settlement, the court must "find the facts and state its legal conclusions under Rule 52(a)."[3] The court has discretion to determine which method to use to calculate fees and expenses.[4]

2. Class Counsel contend that the lodestar method should be used to calculate their fees and expenses in this case because the Settlement has a claims-made structure with no upper cap on relief and, therefore, no true "common fund" from which a percentage fee could be derived. The Court finds that use of the lodestar method is most appropriate here.[5] Under that method, the court determines the reasonable number of hours expended on the litigation, and then multiplies the reasonable hours expended by the reasonable hourly rates.[6]

---

[1] *In re: Motor Fuel Temperature Sales Pracs. Litig.*, No. 07-MD-1840-KHV, 2016 WL 4445438, at *2 (D. Kan. Aug. 24, 2016) (citation omitted).

[2] *Id.* (citing *Law v. Nat'l Collegiate Athletics Ass'n*, 4 F. App'x 749, 751 (10th Cir. 2001)).

[3] Fed. R. Civ. P. 23(h)(3).

[4] *See Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279–80 (6th Cir. 2016) (citations omitted); *see also Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994) (recognizing advantages and disadvantages with both methods).

[5] *See* Rubenstein, Newberg on Class Actions § 15:56 (5th ed. 2016) ("Because there is no real common fund in a claims-made settlement, fees in claims-made settlements are typically paid by the defendant, not by the class out of the fund, in addition to the amounts paid to the class members. All that said, in *calculating* those fees, a court may use the scope of the claims-made fund (or its ceiling) as a valuation measure." (footnotes omitted) (citations omitted)).

[6] *See, e.g., Lippoldt v. Cole*, 468 F.3d 1204, 1222 (10th Cir. 2006) (first citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984); and then citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

3.  The "[p]laintiff bears the burden of documenting the appropriate hours expended and hourly rates."[7] More specifically, "[t]he fee applicant has 'the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks.'"[8]

4.  As to determining the rate to apply to reasonable hours expended:

> "[T]he district court should base its hourly rate award on what the evidence shows the market commands for . . . analogous litigation." The party requesting the fees bears "the burden of showing that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." The focus must be on the "prevailing market rate in the relevant community." "[A] district court abuses its discretion when it ignores the parties' market evidence and sets an attorney's hourly rate using the rates it consistently grant[s]." The court may not use its own knowledge to establish the appropriate rate unless the evidence of prevailing market rates before the court is inadequate.[9]

5.  Class Counsel have provided, and the Court has reviewed, detailed time and expense records to support their fee request. Counsel spent nearly 400 hours prosecuting this action from its inception through May 11, 2021, though they seek reimbursement for only 371.25 of those hours. Counsel engaged in the following tasks, among others: (1) investigating the data-breach incident; (2) interviewing prospective Class Members; (3) researching claims and defenses; (4) drafting and filing the class action complaint; (5) maintaining ongoing communications with

---

[7] *Gardner v. Sprint/United Mgmt. Co.*, No. 08-2559, 2009 WL 1917408, at *2 (D. Kan. July 2, 2009) (citation omitted).

[8] *Schneider v. CitiMortgage, Inc.*, No. 13-4094-SAC, 2018 WL 3068172, at *2 (D. Kan. June 21, 2018) (quoting *Case v. U.S.D. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998)); *see also United Phosphorous, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233−34 (10th Cir. 2000).

[9] *United Phosphorous*, 205 F.3d at 1233−34 (second and third alteration in original) (footnotes omitted) (citations omitted).

Class Members; (6) researching and drafting an opposition to WSU's motion to dismiss; (7) participating in months of settlement negotiations; (8) working with WSU to jointly draft the Settlement Agreement; (9) preparing and arguing in support of the motion for preliminary approval; (10) working with the Claims Administrator to supervise issuance of the class notice; (11) assisting in answering questions from Class Members; and (12) drafting the motion for final settlement approval.  Costs associated the present fee application are omitted from Class Counsel's fee request.  Class Counsel handled this case efficiently from the outset, assigning tasks to counsel billing at a lower rate whenever possible.

6. The Court is satisfied that the records provided in this case the affidavit of lead Class Counsel, and relevant precedent support that the hours worked were reasonable under the circumstances and that the requested hourly rates are reasonable.  Those hours and rates are as follows:[10]

| NAME | | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| William B. Federman | (A) | 91.55 | $850 | $ 77,817.50 |
| A. Brooke Murphy | (A) | 214.60 | $500 | $107,300.00 |
| Molly E. Brantley | (A) | 3.70 | $450 | $1,665.00 |
| Cedric C. M. Bond | (A) | 20.20 | $410 | $8,282.00 |
| Tyler J. Bean | (A) | 2.70 | $350 | $945.00 |
| Brandon Boulware | (A) | 13.50 | $675 | $9,112.50 |
| Robin K. Hester | (PL) | 19.70 | $250 | $4,925.00 |
| Kim Donnelly | (PL) | 5.30 | $175 | $927.50 |
| **TOTAL:** | | **371.25** | | **$210,974.50** |

---

[10] *See, e.g.*, *In re Samsung Top-Load Washing Mach. Mktg. Sales Pracs. & Prods. Liab. Litig.*, No. 17-2792-D, 2020 WL 9936692, at *7 (W.D. Okla. June 11, 2020) (finding Federman & Sherman's rates reasonable, including partner rates up to $1,050 per hour), *aff'd*, 997 F.3d 1077 (10th Cir. 2021); *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 222−23 (W.D. Mo. 2017) (approving hourly rates ranging from $261 to $897 as not dissimilar to rates charged in the Kansas City area).  *But see In re Davita Healthcare Partners, Inc.*, No. 12-2074-WJM-CBS, 2015 WL 3582265, at *4 (D Colo. June 5, 2015) (finding hourly rate of $825 for partners "not commensurate with typical Denver area rates").

7. The Court is also satisfied that the expenses for which Class Counsel seek reimbursement are the types of expenses routinely charged, were appropriately documented by Class Counsel, and appear to have been necessary and reasonable to prosecute the litigation. Those expenses are as follows:

| EXPENSE | TOTAL |
|---|---|
| Photocopies and Postage | $164.75 |
| Filing, Process, Legal Notice and Transcripts | $260.51 |
| Litigation Expense (E-Discovery and Storage) | $9.37 |
| Lexis, Westlaw, Online Library Research | $3,617.76 |
| **TOTAL:** | **$4,052.39** |

8. The Court finds that the lodestar amount is reasonable under a cross-check performed according to the "*Johnson* factors," consistent with the Tenth Circuit's holding that "in all cases, whichever method is used, the court must consider the twelve *Johnson* factors."[11]

9. The "*Johnson* factors," derived from the Fifth Circuit's 1974 decision in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974), are as follows: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[12] The Tenth Circuit has recognized that all of these factors are "rarely

---

[11] *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994).

[12] *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 455−56 (10th Cr. 1988) (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 71, 717−19 (5th Cir. 1974)).

applicable" in one case.[13]

10.     Under the first factor, the time and labor involved, Class Counsel spent nearly 400 hours prosecuting this case over a period of about a year, though this action settled only five months after its filing.  Class Counsel's lodestar accounts for only 371.25 of their hours spent.  This factor is either neutral or weighs in favor of the lodestar request.

11.     Under the second and tenth factors—the novelty and difficulty of the questions and the undesirability of the case—this matter clearly presented novel and difficult issues that made it an undesirable undertaking.  Data-breach litigation is a technical, emerging area of the law.  In its motion to dismiss, WSU raised Article III standing, the scope of its duty of care, immunity from suit, applicability of the Kansas Consumer Protection Act, what damages are recoverable, and whether a data-breach class could be certified (an issue not yet decided by the Tenth Circuit).  Plaintiff was preparing his response when this case was resolved.  These factors weigh in favor of the lodestar amount.

12.     Under the third and ninth factors—the skill requisite to perform the legal service properly and the experience, reputation, and ability of the attorneys—all of the lawyers involved are highly skilled, and lead Class Counsel have extensive experience in other data-breach actions.[14]  The skills required of Class Counsel in this case ran the gamut from investigation to negotiation to specialized class-action expertise. That expertise and skill was necessitated by the fact that WSU is represented by large, sophisticated, and capable defense firms.  These factors weigh in favor of the requested lodestar amount.

---

[13] *Id.* at 456.

[14] *See* Doc. 39-1 at 15−16.

13. The fourth factor, preclusion of other employment by the attorney due to acceptance of the case, is either neutral or weighs in favor of the requested lodestar amount. As set forth above with regard to the first factor, six attorneys and two paralegals spent approximately 400 hours on this case over the course of about a year. Lead Class Counsel attests that this case precluded counsel from working on other matters, resulting in lost business opportunities.

14. Under the fifth and sixth factors—the customary fee and any pre-arranged fee—Class Counsel took this case entirely on a contingency fee basis and fronted all of the litigation costs. The risk of non-recovery was great, given the hurdles facing plaintiffs in data-breach actions and the unsettled state of the law. This factor weighs in favor of the requested lodestar amount.

15. Under the seventh factor, time limitations imposed by the client or the circumstances, Class Counsel state, and the Court agrees, that the longer this action went unresolved, the longer Class Members' personal identifying information was at risk. Because the Settlement provides compensation for credit monitoring and identity-theft protection, prompt resolution of this case was essential to helping Class Members detect and prevent issues arising from the theft of their personal identifying information. This factor weighs in favor of the requested lodestar amount.

16. With regard to the eighth factor, the amount involved and the results obtained, Class Counsel obtained a settlement on behalf of approximately 440,000 Class Members that provides for cash payments to compensate for the loss of time and expenses associated with the potential exposure of personal identifying information, including payments of $20 per hour for up to three hours of time spent dealing with issues relating to the data-breach incident and reimbursement of up to $300 for out-of-pocket costs to mitigate damages caused by the breach. If every Class Member were to submit a valid claim for the maximum amount allowed, the

Settlement would provide more than $130 million in aggregate cash payments to the Class. However, at the final settlement approval hearing, counsel informed the Court that the claims submitted as of July 23, 2021 (past the claims deadline) amounted to only approximately $162,700, subject to validity review, meaning that the Settlement has quite a low claims rate. This Court nonetheless finds that this factor supports the lodestar-based fee request based on the relief available to the Class.

17. The meaning of the eleventh factor, the nature and length of the professional relationship with the client, is unclear, and courts have sometimes stated that it is irrelevant or immaterial.[15] Despite their short relationship, Class Counsel and Plaintiff worked together successfully to prosecute this action. This factor is neutral.

18. Finally, under the twelfth factor, Counsel have supported that the lodestar amount is commensurate with combined fee and expense awards in similar class actions. The Court finds that this factor weighs in favor of the requested fee.

19. In light of the foregoing findings, the Court approves the requested lodestar fee of $210,974.50 and expenses of $4,052.39 as reasonable under Rule 23(h), for a total of $215,026.89.

20. Class Counsel also seek a multiplier of 1.5 times the lodestar amount to account for the risk they accepted in taking this complex case, which adds more than $100,000 to the total fee request. Although Class Counsel cite multiple cases to support that a multiplier between 2 to 5 times the lodestar amount is routinely granted, the class-action cases they rely upon generally involve a lodestar cross-check employed to evaluate the reasonableness of a percentage-based

---

[15] *Peterson v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 WL 3793963, at *12 (D. Kan, Aug. 25, 2011) (citation omitted).

award in a common-fund situation, which is not present here.[16]  The Court finds that in this case, compensating Class Counsel at reasonable hourly rates for the reasonable number of hours expended on the litigation should account for the complexity of the matter.  The Court finds that the multiplier is not warranted under the *Johnson* factors, particularly in light of the low rate of claims submitted by Class Members, which as of the date of the final settlement approval hearing totaled significantly less than the fees awarded herein on the basis of the lodestar alone.  Adding the multiplier would compensate Class Counsel at a rate roughly twice the total class recovery.

**IT IS THEREFORE ORDERED** that Plaintiff's Unopposed Motion for Attorneys' Fees and Expenses and for a Service Award to Representative Plaintiff (Doc. 38) is **granted** as to the lodestar fee request but **denied** as to the request for a multiplier.  Class Counsel are awarded of fees of $210,974.50 and expenses of $4,052.39, for a total of $215,026.89.

**IT IS SO ORDERED.**

Dated: August 18, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[16] *See, e.g.*, *Chieftan Royalty Co. v. XTO Energy Inc.*, No. CIV-11-29-KEW, 2018 WL 2296588, at *10 (E.D. Okla. Mar. 27, 2018) (stating that 2.58 multiplier was "well within the range of multipliers approved in the Tenth Circuit, and other circuits, *when a lodestar cross-check is used*" to evaluate the reasonableness of a percentage-based fee award (emphasis added) (collecting cases)); *Shaw v. Interthinx, Inc.*, No. 13-01229-REB-NYW, 2015 WL 1867861, at *8 (D. Colo. Apr. 22, 2015) (stating that "[c]ourts using the percentage method will often crosscheck the requested award with the lodestar amount" and allowing 1.37 lodestar multiplier (citation omitted)); *Mishkin v. Zynex, Inc.*, Nos . 09-00780, 09-00816, 09-00829, 2012 WL 4069295 (D. Colo. Sept. 14, 2012) (awarding fee of 25% of gross settlement fund, which amounted to .80 lodestar multiplier); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (finding that lodestar multiplier of 1.8 was "imminently reasonable" due to risks involved in litigating multi-year, contested MDL, where fee requested amounted to less than 16% of the benefit conferred on class members).